

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0679-14

### EX PARTE MANUEL TORRES, Appellant

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE EIGHTH COURT OF APPEALS
### EL PASO COUNTY

**ALCALA, J., delivered the opinion for a unanimous Court.**

### O P I N I O N

This case comes to us on discretionary review of a direct appeal addressing a trial

court's denial of habeas relief that had been requested pursuant to *Padilla v. Kentucky*. *See*

U.S. CONST. AMEND. VI, XIV; *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473 (2010).

In this ineffective-assistance-of-counsel appeal, we determine that trial counsel performed

deficiently by failing to adequately advise Manuel Torres, appellant, regarding the

presumptively mandatory deportation consequences of his plea of guilty. *See Ex parte*

*Torres*, No. 08-12-00244-CR, 2014 WL 1168929, at *5 (Tex. App.—El Paso Mar. 21, 2014)

(not designated for publication). We also determine that the record supports the trial court's

conclusion that appellant was not prejudiced as a result of counsel's error because appellant failed to show that he would have pursued a trial had he been correctly advised about the immigration consequences of his plea. *See id*. at \*6. Accordingly, we overrule the State's third ground in its petition for discretionary review that contends that trial counsel did not render deficient performance, and we sustain the first two grounds that assert that the court of appeals erred by determining that appellant was prejudiced.[1] We, therefore, reverse the judgment of the court of appeals and reinstate the trial court's judgment denying relief.

## I. Background

Appellant is a Mexican national whose parents brought him to the United States as a young two- or three-year-old child. In 2006, appellant obtained lawful permanent resident (LPR) status, which gave him legal permission to reside and work in this country. In

---

[1] The State advances three grounds for review:

(1) Where [appellant] failed to allege or attest in his habeas pleadings, or otherwise provide any competent evidence demonstrating, that had he been properly advised, he would have availed himself of a trial, the Eighth Court erroneously held that Torres satisfied the prejudice prong of *Strickland*.

(2) The Eighth Court erroneously failed to conduct a proper *Strickland* prejudice inquiry where it held that prejudice stemming from a *Padilla* violation was "presumed," failed to afford proper deference to the trial court's express findings on disputed fact issues and credibility assessments, and failed to determine whether a decision to reject the plea bargain would have been rational under the circumstances.

(3) Where the totality of the circumstances demonstrates that counsel sufficiently advised [appellant] that deportation was an inevitable consequence after his guilty plea, the Eighth Court erroneously held that counsel rendered deficient performance simply because he did not specifically state that [appellant's] plea "will" result in his removal.

February 2011, appellant, on two occasions, went to Whataburger restaurants and stole money from the cash registers. At the time of his arrest for those offenses, appellant was found to be in possession of cocaine and marijuana. He was subsequently charged with the felony offenses of robbery and possession of cocaine.[2] In July 2011, appellant entered into a plea bargain with the State. In exchange for appellant's plea of guilty to both offenses, the State agreed to recommend a sentence of ten years' deferred-adjudication community supervision on the robbery charge and five years' deferred-adjudication community supervision on the possession charge. In addition, the State agreed to forgo prosecution of a related burglary-of-a-building charge and to decline prosecution on a misdemeanor possession-of-marijuana charge. The trial court accepted appellant's guilty plea, and it sentenced him in accordance with the State's recommendations.

Several days after the plea hearing, appellant was re-arrested on separate charges. At that point, Immigration and Customs Enforcement (ICE) became aware of appellant's plea to the robbery and possession offenses, and it placed a detainer on him that would prevent him from being released from law-enforcement custody. ICE subsequently transferred appellant to a federal immigration detention facility, and it initiated removal proceedings against him.

Pursuant to the provisions in Code of Criminal Procedure Article 11.072, appellant filed an application for a post-conviction writ of habeas corpus, in which he challenged the

---

[2] *See* TEX. PENAL CODE § 29.02; TEX. HEALTH & SAFETY CODE § 481.115(c).

validity of his guilty plea on the basis of ineffective assistance of counsel.[3] Specifically, applicant alleged that trial counsel was ineffective for having failed to properly advise him that "a plea of guilty on a charge involving a controlled substance would automatically place [him] in removal proceedings due to his lawful permanent residence status." He further asserted that counsel's failure to properly advise him harmed him in that "he is facing deportation and is under removal proceedings[.]" In sworn affidavits accompanying his original and amended applications, appellant alleged that, although counsel was aware that he was not a citizen, counsel never told him that his plea would result in mandatory deportation. He stated,

> Under [the] advice of my attorney, I took the plea because I was told that I would not be convicted of these cases so long as I did what the Court told me to do. On the day of the hearing the Court also told me that I would not be convicted so long as I did everything that was asked of me. My attorney did not advise me that if I pleaded guilty, even as a deferred adjudication, I would be put in deportation proceedings.

He further stated that the "first and only time" that counsel discussed potential immigration problems with him was after he was re-arrested for a subsequent offense, at which point counsel told him that an immigration hold had been placed on him "because [he] had pleaded," and, at that point, counsel advised him to "contact an immigration attorney regarding the immigration case."

The habeas court held a hearing on appellant's claim. Because he was in federal immigration custody, appellant did not attend the hearing. After obtaining an affidavit from

---

[3] *See* TEX. CODE CRIM. PROC. art. 11.072.

appellant's trial counsel, the State called him as a witness.[4]  In his testimony before the habeas court, appellant's trial counsel explained that he was the public defender assigned to appellant's case.  He recalled that appellant had given an inculpatory statement to the police, which prompted counsel to recommend that appellant accept the State's plea offer.  Counsel stated that, in his dealings with appellant and his family, "they were mostly concerned, first, about getting him out of jail," rather than being concerned about the potential immigration consequences of appellant's offenses.  Counsel stated that he admonished appellant "from the get-go" that, "because of his status as a noncitizen, [he] should consult an immigration lawyer." Counsel stated that he "certainly discussed" appellant's immigration status with him and that appellant was "definitely [ ] aware of the possibility of immigration consequences of pleading guilty to two felony offenses."  Asked specifically what he told appellant regarding the immigration consequences of his guilty plea, counsel stated that he told appellant

> [t]hat he had two felonies and that either one of them could result in his deportation and that's why it was—it was important for him to hire an immigration lawyer, because the public defender's office couldn't help him on that part of the case; that this [case] was not going to end by his plea. . . .

---

[4]  Counsel's hearing testimony was consistent with the substance of his written affidavit, in which he stated that he initially told appellant's brother "that the family should hire an immigration lawyer, as the Public Defender only handles criminal cases and the charges [appellant] had could lead to deportation if he plead guilty or was found guilty by a Judge or jury." Counsel additionally stated that, "[o]n the date of the plea[,] . . . [he] advised Mr. Torres that pleading guilty to the felony charges could get him deported because the Federal Government . . . was stepping up its enforcement of Criminal Aliens." He concluded, "Mr. Torres knew at the time he pled guilty that pleading guilty to these felony charges could get him deported from the United States . . . . I personally advised him of these consequences each time I visited him in jail . . . and on the date of his Guilty Plea[.]"

I did tell him that the federal government is much more serious than they have been in the past about [deportation]. I didn't say that it was going to happen the next day. But as far as how imminent that it could be, I just impressed on him the need to hire an advocate to represent him on the immigration side, since these were serious felony charges, either one of which could result in his deportation . . . under federal law.

Counsel indicated that he had discussed appellant's immigration status with him at least twice during the case. He denied representing to appellant that he would not be deported. He further denied ever telling appellant that, if he successfully completed his term of community supervision, the guilty plea would be "off his record," instead suggesting that he told appellant that, although the charges would be "dismissed," there would "always be a record of [his] arrest, indictment, guilty plea and probated sentence as part of [his] permanent record." Counsel indicated that he had reviewed the plea papers with appellant, including that portion of the plea papers that stated, "If you are not a citizen of the United States, by pleading guilty or nolo contendere to this offense, you may be deported, excluded from future admission into the United States or denied naturalization under federal law."

On cross-examination by habeas counsel, trial counsel acknowledged that he had never independently reviewed the Immigration and Nationality Act (INA) to determine whether the offenses to which appellant was pleading guilty were deportable offenses, and he further conceded that he did not know what constituted a deportable offense under the INA, other than what he had learned at legal seminars. Counsel acknowledged that, although he had advised appellant that he could be deported as a result of his guilty plea, he did not

affirmatively tell appellant that he would be deported because, in his experience, a person can sometimes plead guilty to an aggravated felony and never actually be deported.

After the close of testimony, the trial court denied relief. The trial judge stated on the record that, as to any factual dispute between counsel's testimony and appellant's assertions in his affidavits, he "believe[d] [counsel's] version of the facts and disbelieve[d] [appellant's] version of the facts." The trial judge further stated, "As far as [counsel's] legal representation, I believe that his legal representation was not ineffective."

The trial court made multiple factual findings determining that trial counsel did not perform deficiently. Its subsequent written findings of fact were as follows:

- "[Counsel] testified that he discussed immigration consequences with the applicant approximately three times prior to the applicant's guilty plea."
- "[Counsel] testified that he told the applicant that a plea to either of the charges he faced could subject him to deportation."
- "[Counsel] testified that he told the applicant that a plea of guilty . . . was not the end of the proceedings because he still had to face the immigration authorities to address deportation consequences."
- "[Counsel] testified that he told the applicant to retain an advocate to represent him before the immigration authorities to address deportation consequences."
- "This Court finds the testimony of [counsel] to be credible. This Court believes [counsel's] testimony over that of the applicant's . . . affidavit[.]"
- "This Court resolves any [factual] doubt against the applicant."
- "This Court does not believe the applicant's allegation that he was not told of immigration consequences by his trial counsel."

In line with these factual findings, the trial court determined in its written conclusions of law that appellant had failed to carry his burden of establishing that trial counsel performed deficiently. It stated,

- "This Court concludes that the applicant's trial counsel fully advised the applicant of

the immigration consequences of his guilty plea in this case as required by *Padilla v. Kentucky*[.]"

• "This Court finds that [counsel] provided effective assistance of counsel to the applicant. Thus, the applicant's claims that [counsel] provided deficient performance are without merit."

The trial court's findings and conclusions addressing whether appellant had shown that he was prejudiced by counsel's performance were much shorter and appear to have been contingent on the court's determination that appellant was adequately advised by his attorney. The court stated, "This Court finds that the applicant was well aware of the immigration consequences before entering his plea of guilty. Thus, he has failed to show that he was prejudiced in any way."

On appeal, the court of appeals reversed the trial court's ruling, and it granted appellant relief. *See Torres*, 2014 WL 1168929, at *1. With respect to deficient performance, the court of appeals agreed with appellant's contention that trial counsel had failed to "clearly and properly warn him of the impending immigration consequences of his plea, as required by the Sixth Amendment." *Id*. at *4. Relying on the Supreme Court's decision in *Padilla*, the court of appeals reasoned that, because the offenses to which appellant pleaded guilty were automatically deportable offenses, counsel "had a duty to stress that pleading guilty to those crimes and receiving deferred adjudication would absolutely result in appellant's imminent removal from the United States." *Id*. at *5 (citing 559 U.S. at 369). With respect to trial counsel's testimony at the habeas hearing indicating that his advice was based in part on his belief that, even when a defendant pleads guilty to an

automatically deportable offense, removal is not always a foregone conclusion, the court of appeals observed that "counsel's constitutional duty to inform his client that his [client's] removal is a virtual legal certainty does not wane merely because counsel believes the probability of actual removal is uncertain based on his past experience and ICE's enforcement priorities." *Id.*

The court of appeals also found adequate evidence giving rise to a finding of prejudice, observing that appellant "stated in his affidavit that he accepted the plea deal because trial counsel advised him that he would not have to go to jail and that the deferred adjudication meant the charges would eventually be dismissed." *Id.* at *6. The fact that trial counsel explained those circumstances of pleading guilty "but did not inform [appellant] that the plea would subject [him] to mandatory removal" was a factor that "weigh[ed] heavily" in the court's analysis. *Id.* The court further considered that appellant was a lawful permanent resident, that he was a native English speaker, and that he had resided in the United States since he was a small child. *Id.* It determined that appellant had "sufficiently alleged that he would have taken alternate courses of action," such as negotiating with the State to secure an "immigration-neutral plea agreement," attempting to delay his plea until 2013, at which point he may have been eligible for some form of immigration relief, or, alternatively, going to trial. *Id.* Based on the foregoing considerations, the court held that, in view of the totality of the circumstances, appellant met his burden in establishing prejudice. *Id.* at *7.

## II. Analysis

We agree with the court of appeals's determination that trial counsel failed to adequately advise appellant regarding the "presumptively mandatory" deportation consequence of his guilty plea to the felony offenses of robbery and possession of cocaine. *Padilla*, 559 U.S. at 369. We, however, further conclude that the court of appeals erred by determining that appellant has made an adequate showing of prejudice, based on his failure to demonstrate a reasonable probability that, but for counsel's errors, he would have rejected the plea bargain and instead pursued a trial. After we review the applicable law, we explain each of these conclusions in turn below.

### (A) Applicable Law

Code of Criminal Procedure Article 11.072 is "the exclusive means by which the district courts may exercise their original habeas jurisdiction under Article V, Section 8, of the Texas Constitution" in cases involving an individual who is serving a term of community supervision. *Ex parte Villanueva*, 252 S.W.3d 391, 397 (Tex. Crim. App. 2008). In a post-conviction writ application filed pursuant to Article 11.072, the trial judge is the sole finder of fact. *State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013). In this setting, we afford almost total deference to a trial court's factual findings when they are supported by the record, especially when those findings are based upon credibility and demeanor. *Id.*; *see also Ex parte Garcia*, 353 S.W.3d 785, 788 (Tex. Crim. App. 2011) (observing that, in context of Article 11.072 application, the court of appeals and this Court "are truly appellate

courts," and, thus, there is "less leeway" to disregard trial court's factual findings).

An applicant for a post-conviction writ of habeas corpus bears the burden of proving his claim by a preponderance of the evidence. *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002). To demonstrate that he is entitled to post-conviction relief on the basis of ineffective assistance of counsel, an applicant must demonstrate that (1) counsel's performance was deficient, in that it fell below an objective standard of reasonableness, and (2) the applicant was prejudiced as a result of counsel's errors, in that, but for those errors, there is a reasonable probability of a different outcome. *Strickland v. Washington*, 466 U.S. 668, 687, 693, 104 S. Ct. 2052 (1984). In the context of a collateral challenge to a guilty plea, the focus of the prejudice inquiry is on "whether counsel's constitutionally ineffective performance affected the outcome of the plea process," and on whether a defendant has shown that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *See Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985).

In *Padilla v. Kentucky*, the Supreme Court expanded the scope of the Sixth Amendment to hold that it requires an attorney for a non-citizen criminal defendant to provide advice about the risk of deportation arising from a guilty plea. 559 U.S. at 360. In that case, Padilla, who had lawful-permanent-resident status, pleaded guilty to a drug-trafficking offense, and, as a result, he faced deportation. *Id.* at 359. Prior to entering his plea of guilty, Padilla's counsel not only failed to advise him of any possibility of negative immigration consequences stemming from his guilty plea, but further told him that he "did

not have to worry about immigration status since he had been in the country so long." *Id.* Padilla sought post-conviction relief on the basis of ineffective assistance of counsel, asserting that he had relied on counsel's erroneous advice when he pleaded guilty to the drug charges that made his deportation "virtually mandatory" under federal immigration law. *Id.* He further asserted that "he would have insisted on going to trial if he had not received incorrect advice from his attorney." *Id.*

Agreeing with Padilla's contention as to the matter of counsel's deficient performance, the Supreme Court held that "constitutionally competent counsel would have advised [Padilla] that his conviction for drug distribution made him subject to automatic deportation." *Id.* at 360. In reaching this conclusion, the Court observed that, under the current federal immigration laws, the "drastic measure" of deportation "is now virtually inevitable for a vast number of noncitizens convicted of crimes." *Id.* In particular, it noted that, "[u]nder contemporary law, if a noncitizen has committed a removable offense . . . his removal is practically inevitable but for the possible exercise of limited remnants of equitable discretion vested in the Attorney General to cancel removal for noncitizens convicted of particular classes of offenses." *Id.* at 363-64 (citing 8 U.S.C. § 1229b). It further observed that, subject to limited exceptions, "this discretionary relief is not available for an offense related to trafficking in a controlled substance." *Id.* at 364 (citing 8 U.S.C. §§ 1101(a)(43)(B); 1228). In light of these changes, the Court reasoned that, as a matter of federal law, "deportation is an integral part—indeed, sometimes the most important part—of

the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes," thereby warranting expansion of Sixth Amendment protections to this context. *Id.*

In addressing the deficient-performance prong of a *Strickland* analysis as it applies in this situation, the Court held that "[t]he weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation." *Id.* at 367. Further, the Court observed that the terms of the immigration statute relevant to Padilla's case were "succinct, clear, and explicit in defining the removal consequence for [his] conviction." *Id.* at 368 (citing 8 U.S.C. § 1227(a)(2)(B)(i)). Given the clarity of the immigration statute at issue in making Padilla "eligible for deportation" as a result of his guilty plea, the Court explained that this was "not a hard case in which to find deficiency: The consequences of Padilla's plea could easily be determined from reading the removal statute, his deportation was presumptively mandatory, and his counsel's advice was incorrect." *Id.* at 368-69. The Court went on, however, to explain that, when the deportation consequences of a particular plea are unclear, the scope of counsel's duty to give advice is more limited. It stated,

> There will, therefore, undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain. The duty of the private practitioner in such cases is more limited. When the law is not succinct and straightforward . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear.

*Id.* at 369. After concluding that Padilla had adequately alleged constitutional deficiency to

satisfy the first prong of *Strickland*, the Court remanded the case to the state court to conduct a prejudice analysis under *Strickland*'s second prong in the first instance. *Id.* at 374.

**(B) Trial Counsel's Performance was Deficient**

We begin by addressing the State's third ground for review, in which it asserts that the court of appeals erred in its conclusion that appellant satisfied the first prong of *Strickland*. *See Torres*, 2014 WL 1168929, at *4-5. Disagreeing with the State's contention, we hold that appellant's counsel failed to adequately advise appellant regarding the "presumptively mandatory" deportation consequence of his plea of guilty, in violation of counsel's duties under *Padilla*. *See Padilla*, 559 U.S. at 368-69. We, therefore, agree with the court of appeals's holding that appellant made an adequate showing of deficient performance. *See Torres*, 2014 WL 1168929, at *4-5.

Here, as in *Padilla* itself, the deportation consequences of appellant's guilty plea were "truly clear," and, thus, counsel's duty to advise appellant regarding those consequences was "equally clear." *Padilla*, 559 U.S. at 369. Under federal law, the controlled-substance offense to which appellant pleaded guilty—possession of cocaine in the amount of one to four grams—is a deportable offense. *See* 8 U.S.C. § 1227(a)(2)(B)(i) ("Any alien who at any time after admission has been convicted of a violation of . . . any law or regulation of a State . . . relating to a controlled substance . . . other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable."); *see also Padilla*, 559 U.S. at 368 (citing that same section and observing that "Padilla's counsel could have easily

determined that his plea would make him eligible for deportation simply from reading the text of the statute, which . . . specifically commands removal for all controlled substances convictions except for the most trivial of marijuana possession offenses"). Furthermore, the fact that appellant simultaneously pleaded guilty to robbery, which is classified under the federal immigration statutes as an aggravated felony, also rendered him subject to deportation and appears to preclude the availability of any discretionary relief from his deportation. *See* 8 U.S.C. §§ 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable."); 1101(a)(43)(G) ("The term 'aggravated felony' means a theft offense . . . or burglary offense for which the term of imprisonment [is] at least one year."); 1229b (limiting authority of Attorney General to cancel removal for certain lawful permanent residents to those individuals who have "not been convicted of any aggravated felony"). The fact that appellant received a term of community supervision as punishment for these offenses rather than jail time has no bearing on the presumptively mandatory deportation consequences of his plea. *See id.* § 1101(a)(48)(A) ("The term 'conviction' means . . . a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where . . . (i) . . . the alien has entered a plea of guilty . . . and (ii) the judge has ordered some form of punishment, penalty, or restraint[.]"). Thus, as in *Padilla*, the terms of the federal immigration statutes at issue here are "succinct, clear, and explicit" in defining the removal consequences of appellant's guilty plea to a controlled-substances offense coupled with his plea to an aggravated felony. *Padilla*, 559 U.S. at 368. Counsel,

therefore, was obligated to inform appellant of the "presumptively mandatory" immigration-law consequences of his plea that would make him "subject to automatic deportation." *See id.* at 360, 369.

Counsel's advice failed to adequately warn appellant of the gravity of the deportation consequences of his guilty plea that made him "subject to automatic deportation." *See id.* at 360. As is reflected by counsel's habeas testimony, counsel advised appellant to "consult an immigration lawyer" because of the "possibility of immigration consequences" resulting from his pleas of guilty to the two offenses, "either one of which could result in his deportation." Even deferring to the habeas court's factual finding that counsel's testimony was credible in this respect and that appellant was thus aware of some risk of deportation, counsel's advice fell short of *Padilla*'s requirement that counsel give clear and accurate advice regarding the "presumptively mandatory" deportation consequence of his guilty plea under these circumstances. *See id.* at 369. In short, it was not enough for counsel to advise appellant that he might be deported; rather, counsel was required to inform appellant that, under these circumstances, his deportation was a virtual legal certainty. *See id.*[5] And,

---

[5] *See also United States v. Bonilla*, 637 F.3d 980, 984 (9th Cir. 2011) (holding that defendant who "faces almost certain deportation is entitled to know more than that it is possible that a guilty plea could lead to removal; he is entitled to know that it is a virtual certainty"); *Hernandez v. State*, 124 So.3d 757, 762 (Fla. 2012) (where defense counsel "merely advised Hernandez that a plea [to a controlled-substance offense] could/may affect [his] immigration status," counsel was "deficient under *Padilla* for failing to advise Hernandez that his plea subjected him to presumptively mandatory deportation"); *Encarnacion v. State*, 763 S.E.2d 463, 466 (Ga. 2014) (observing in context of *Padilla* claim that, with respect to the likelihood of deportation after a plea of guilty to an aggravated felony, "[i]t is not enough for counsel to say 'maybe' when the correct advice is 'almost certainly will'").

although it is true, as the State suggests, that counsel cannot always accurately predict the future as to whether a particular individual will, in fact, ultimately be deported, predicting the future is not what *Padilla* requires. Instead, *Padilla* requires that counsel give a defendant accurate legal advice about the "truly clear" consequences of a plea of guilty to an offense that, as a matter of law, renders him "subject to automatic deportation." *See id.* at 360, 369. We, therefore, agree with the observation made by the court of appeals that "counsel's constitutional duty to inform his client that his [client's] removal is a virtual legal certainty does not wane merely because counsel believes the probability of actual removal is uncertain[.]" *Torres*, 2014 WL 1168929, at \*6. Given that appellant's guilty plea rendered him subject to automatic deportation, we hold that, by advising appellant that deportation was a mere possibility, appellant's trial counsel failed to satisfy his duties under *Padilla*. *See Padilla*, 559 U.S. at 360, 369. We, therefore, overrule the State's third ground for review, and we consider whether appellant was prejudiced as a result of counsel's error.

### (C) Appellant Has Not Proven Prejudice

In its first and second grounds for review, the State challenges both (1) the standard employed by the court of appeals to determine whether a defendant has been prejudiced by an attorney's deficient advice in this context, and (2) the application of the standard to the facts of this case in light of appellant's failure to allege or prove that he would have availed himself of a trial if he had been properly advised about the certain deportation consequence from his pleas of guilty. We conclude that the proper standard for determining prejudice is

the one set forth in *Hill*, which requires an applicant to show a reasonable probability that counsel's errors affected the outcome of the plea proceedings, in the sense that, but for counsel's errors, the applicant would have rejected the plea bargain and instead pursued a trial. *See Hill*, 474 U.S. at 59. Thus, we reject that it is appropriate to presume prejudice in this context, as it appears that the court of appeals may have suggested. We also conclude that, in applying the appropriate standard to the facts of this case, the court of appeals erred by failing to defer to the habeas court's implicit fact findings that appellant's claims lacked credibility and that appellant failed to plead or prove that, under the circumstances, he would have rejected the plea bargain and proceeded to trial had he been properly advised, or that it would have been rational for him to do so. We, therefore, sustain the State's first and second grounds for review.

**(1) Appellant Must Demonstrate A Reasonable Probability That, But For Counsel's Errors, He Would Have Rejected the Plea Bargain and Pursued a Trial**

In its petition for discretionary review, the State contends that the court of appeals erred by incorrectly applying a presumption of prejudice to appellant's case. *See Torres*, 2014 WL 1168929, at *6 (rejecting a "solely merits-based prejudice analysis" that focuses on the likelihood of success at trial, and instead suggesting that "deprivation of a trial stemming from a *Padilla* violation is a structural defect, which . . . demands a presumption of prejudice"). To the extent that the court of appeals in fact applied such a standard, we agree with the State that it is inappropriate in this context. As we have previously held, a

criminal defense attorney's errors, unless they rise to the level of a complete denial of counsel, are subject to the usual *Strickland* prejudice analysis. *See Johnson v. State*, 169 S.W.3d 223, 229, 239 (Tex. Crim. App. 2005). As we explain further below, we conclude that the prejudice standard that governs here is the familiar *Strickland* standard as it applies in the context of a guilty plea, under *Hill*, that asks whether, but for counsel's errors in a plea proceeding, there exists a reasonable probability that the defendant would have rejected the plea bargain and instead pursued a trial. *See Hill*, 474 U.S. at 59.

Our analysis in this context is guided by longstanding precedent that generally applies to a collateral attack on a guilty plea under *Strickland*. *See Strickland*, 466 U.S. at 695; *Hill*, 474 U.S. at 59; *Ex parte Morrow*, 952 S.W.2d 530, 536 (Tex. Crim. App. 1997). In *Hill*, the Supreme Court considered a defendant's habeas claim that, prior to his entering a plea of guilty to charges of theft and murder, his court-appointed attorney had failed to accurately advise him regarding his parole eligibility date. *Hill*, 474 U.S. at 53. After holding that the familiar two-part *Strickland* test would apply in this situation, the Supreme Court rejected Hill's claim on the basis that he had failed to make the requisite showing of prejudice. *Id.* at 59-60. The Court stated that, in the context of an ineffective-assistance claim as it relates to a defendant's acceptance of a plea bargain and entry of a guilty plea, the relevant prejudice inquiry "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id*. at 59. It further explained, "In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable

probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* Applying that standard to Hill's case, the Court reasoned that he had failed to meet it, observing that he "did not allege in his habeas petition that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial." *Id.* at 60. The Court further reasoned that Hill had "alleged no special circumstances that might support the conclusion that he placed particular emphasis on his parole eligibility in deciding whether or not to plead guilty." *Id.*

This Court has regularly applied the *Hill* prejudice test in analogous situations involving a post-conviction attack on the validity of a guilty plea based on counsel's alleged error in a plea proceeding. *See Morrow*, 952 S.W.2d at 536 (explaining that, "[w]hen a defendant enters his plea upon the advice of counsel," the proper prejudice inquiry is "whether there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial") (citing *Hill*, 474 U.S. at 60); *see also Ex parte Barnaby*, 475 S.W.3d 316, 324 (Tex. Crim. App. 2015); *Ex parte Moody*, 991 S.W.2d 856, 858 (Tex. Crim. App. 1999); *Ex parte Pool,* 738 S.W.2d 285, 286 (Tex. Crim. App. 1987). We now expressly hold that the *Hill* standard appropriately governs the prejudice inquiry in the context of an ineffective-assistance-of-counsel claim under *Padilla*.

We observe that, although it did not directly address the question of prejudice in *Padilla*, the Supreme Court did suggest that, in order to obtain relief on such a claim, an applicant who demonstrates deficient performance would not automatically be entitled to

relief, but instead would be required to "convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 372. This language has been interpreted by numerous courts as comprising part of the prejudice standard applicable to a *Padilla* claim, and we similarly adopt that language as part of the relevant prejudice standard.[6] In applying this language, we note that courts have considered factors such as the evidence supporting an applicant's assertions, the likelihood of his success at trial, the risks the applicant would have faced at trial, the benefits received from the plea bargain, and the trial court's admonishments. *See, e.g., United States v. Kayode*, 777 F.3d 719, 725 (5th Cir. 2014). We caution that, to show that a decision to reject the plea bargain would have been rational under the circumstances, it is not dispositive that an applicant show

---

[6] *See, e.g.*, *United States v. Rodriguez-Vega*, 797 F.3d 781, 788 (9th Cir. 2015) ("To obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances. Where ineffective assistance leads a petitioner to accept a plea bargain, a different result means that, but for counsel's errors, [petitioner] would either have gone to trial or received a better plea bargain."); *United States v. Kayode*, 777 F.3d 719, 724 (5th Cir. 2014) (applying *Hill* test, and observing that habeas petitioner must "convince the court that a decision to reject the plea bargain would have been rational under the circumstances"); *United States v. Fugit*, 703 F.3d 248, 260 (4th Cir. 2012) ("[I]n order to prove prejudice in the guilty plea context, a person challenging his conviction must establish a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. The Supreme Court has specified, furthermore, that such an individual must convince the court that such a decision would have been rational under the circumstances."); *United States v. Orocio*, 645 F.3d 630, 643 (3d Cir. 2011) (*Padilla* prejudice inquiry "must focus on whether [defendant], if made aware of the dire immigration consequences of the proposed guilty plea, could have reasonably chosen to go to trial even though he faced a drug distribution charge constituting an aggravated felony with a 10–year minimum sentence"), *abrogated by Chaidez v. United States*, 133 S. Ct. 1103 (2013); *Ex parte Ali*, 368 S.W.3d 827, 835 (Tex. App.—Austin 2012) (applicant had a burden to prove, by a preponderance of the evidence, "that there is a reasonable probability that, but for counsel's advice, he would not have pleaded guilty and would have insisted on going to trial"; "stated another way, he must convince the court that a decision to reject the plea bargain would have been rational under the circumstances").

that he would have received a more favorable disposition had he gone to trial. *See United States v. Orocio*, 645 F.3d 630, 643 (3d Cir. 2011) (observing that the Supreme Court "requires only that a defendant could have rationally gone to trial in the first place, and it has never required an affirmative demonstration of likely acquittal"; "a rational decision not to plead guilty does not focus solely on whether a defendant would have been found guilty at trial"). Moreover, as *Padilla* recognized, "an alien defendant might rationally be more concerned with removal than with a term of imprisonment." *Id.*; *see also Padilla*, 559 U.S. at 368 ("We too have previously recognized that preserving the client's right to remain in the United States may be more important to the [defendant] than any potential jail sentence.") (citations omitted). Thus, where the totality of the circumstances indicate that a defendant has placed a particular emphasis on the immigration consequences of a plea in deciding whether or not to accept it, this may constitute a circumstance that weighs in favor of a finding of prejudice. *See United States v. Rodriguez-Vega*, 797 F.3d 781, 789 (9th Cir. 2015) ("We have found prejudice where a non-citizen demonstrates clearly that she placed a particular emphasis on the immigration consequence of a plea in deciding whether or not to accept it.").

Having addressed the proper prejudice standard that applies in this context, we observe that, although the court of appeals initially indicated that it was applying a presumption of prejudice, it, in reality, does not appear to have done so. *See Torres*, 2014 WL 1168929, at *6-7. Instead, the appellate court appears to have fully considered the

evidence in the record and evaluated whether that evidence was adequate to give rise to a finding of prejudice under what was essentially the correct standard. *See id.* at *6 (correctly observing that "the defendant must demonstrate that but for counsel's performance, he would have availed himself of the proceeding in question," and holding on the merits that appellant presented adequate facts to show prejudice). Because the State additionally challenges the court of appeals's assessment as to the merits of prejudice, we now review that issue.

**(2) Appellant Has Failed To Present Facts that Adequately Demonstrate Prejudice**

In reaching its conclusion that appellant was prejudiced by his attorney's failure to fully advise him of the deportation consequences of his guilty plea, the court of appeals considered appellant's affidavit, which the court described as indicating that appellant "accepted the plea deal because trial counsel advised him that he would not have to go to jail and that deferred adjudication meant the charges would eventually be dismissed." *See id.* at *6-7. It considered that appellant had lawful permanent resident status; that he was a native English speaker; and that he had resided in the United States since he was a small child. It further determined that he "sufficiently alleged that he would have taken alternate courses of action" had counsel properly advised him, such as delaying his plea bargain and pursuing a plea deal that would have afforded him the opportunity to receive discretionary immigration relief or, alternatively, taking the case to trial. *See id.* We disagree with this analysis. In view of the totality of the record, and deferring to the habeas court's factual findings, we conclude that appellant has failed to demonstrate that, but for counsel's errors, he would have

rejected the plea bargain and pursued a trial. His claim of prejudice, therefore, fails.

We observe, at the outset, that appellant failed to expressly allege, either in his pleadings to the habeas court or in his sworn affidavits, that, had he known the full immigration consequences of his guilty plea, he would have instead decided to plead not guilty and avail himself of a trial. *See Hill*, 474 U.S. at 59-60. Although the court of appeals was persuaded that appellant's affidavits provided substantial evidence of prejudice, we note that his statements in those affidavits make no mention of any special concern for potential immigration consequences, instead appearing to focus on a desire to avoid conviction and jail time. It is true that writ counsel asserted, both at the habeas hearing and in his brief on discretionary review, that, with proper advice, appellant would have pursued other options, including a possible trial. But, in response to these assertions, the State contends, and we agree, that the pleadings and attorney's arguments are alone an inadequate basis for granting habeas relief under the circumstances in this case. *See Guerrero,* 400 S.W.3d at 583 (explaining that sworn pleadings are an inadequate basis upon which to grant writ relief; an attorney's statements, when not based on personal knowledge, are not considered competent evidence to support a defendant's writ claims); *see also Gonzales v. State*, 435 S.W.3d 801, 811 (Tex. Crim. App. 2014) ("We have held that statements of an attorney on the record may be considered as evidence only if the attorney 'is speaking from first-hand knowledge.'") (quoting *Guerrero*, 400 S.W.3d at 585).

In its analysis, the court of appeals emphasized the availability of several options that,

in its view, appellant might have pursued had he been properly advised. For example, it speculated that, had appellant been able to delay his plea deal for two years, and had he during that time been able to negotiate an immigration-neutral plea deal with the State, he might have become eligible for some form of discretionary relief from deportation. But, with respect to these options, aside from the possibility of a trial, the record is devoid of any facts to suggest that such options were available or viable as a means of preventing appellant's deportation. In particular, the record does not indicate that any other more favorable plea offer was made to appellant, or that any such offer would have been available through further negotiations. And, regarding the suggestion that appellant could have delayed his plea until he could either secure a more favorable immigration-neutral plea deal and/or qualify for discretionary immigration relief, the record is similarly devoid of any facts to suggest that such avenues were actually available to appellant under these circumstances. The fact that appellant was charged with two serious felony offenses makes the availability of such options seem unlikely. In short, this record contains inadequate facts to give rise to a finding of a reasonable probability that, but for counsel's erroneous advice, appellant would have pursued a trial or otherwise would have received some other more favorable outcome to the plea proceeding.

The habeas court's factual findings deeming credible the habeas testimony of appellant's trial counsel and finding appellant's assertions lacking in credibility do not support appellant's arguments that he was prejudiced. The trial court's conclusion that relief

should be denied is supported by the facts that appellant had confessed to two felony offenses; that his and his family's primary concern at the time of his arrest and plea was "getting him out of jail"; and that appellant disregarded counsel's advice to seek counsel from an immigration attorney for specific information about how his residency status would be impacted by his plea. Based on these facts, the record supports a conclusion that appellant did not place any special emphasis on avoiding deportation consequences as a result of his plea. Rather, on the contrary, the record makes it appear unlikely that, had appellant been correctly advised that he was subject to mandatory deportation, as opposed to the advice he received regarding a mere risk of deportation, the correct advice would have been the tipping point that would have caused him to reject the plea bargain and avail himself of a trial, thereby risking imprisonment and eventual deportation following a conviction at trial.

Regarding whether it would have been rational under the circumstances for appellant to reject the plea bargain in this case, we observe, as the court of appeals did, that appellant had strong ties to this country that could, at least in theory, cause a rational individual to roll the dice and pursue a trial. Conversely, it also appears that the State had a strong case against appellant on two serious felony offenses, with appellant having confessed to those offenses, and with the record being devoid of any suggestion that appellant had a possible defense to prosecution on either charge. The punishment for those offenses ranged from a minimum prison term of two years to a maximum term of twenty years for robbery, and a minimum prison term of two years to a maximum term of ten years for the cocaine offense. *See* TEX.

PENAL CODE §§ 29.02; 12.33; 12.34; TEX. HEALTH & SAFETY CODE § 481.115. Appellant's plea bargain allowed him to entirely avoid jail time, and it additionally provided for the dismissal of other charges, including a felony burglary charge and a misdemeanor marijuana possession charge. In view of the totality of the circumstances that reveal that it would have been irrational to reject the very favorable plea bargain, we conclude that appellant has failed to adequately show that he was prejudiced as a result of counsel's erroneous advice.

## II. Conclusion

Although we agree with the court of appeals's holding as to the deficient-performance prong of a *Strickland* analysis in this case based on counsel's failure to provide accurate advice regarding the truly clear deportation consequence of appellant's guilty plea, we disagree with its assessment as to the matter of prejudice, in view of the lack of any evidence from appellant as to how he was prejudiced and in the absence of any credible facts in the record showing that, but for counsel's erroneous advice, appellant would have rationally decided to reject the plea bargain and instead pursue a trial. We, therefore, reverse the judgment of the court of appeals and reinstate the trial court's judgment denying relief.

Delivered: February 10, 2016

Publish