

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-22-00324-CR

EX PARTE TUNAS

On Appeal from the 19th District Court
McLennan County, Texas
Trial Court No. 2012-18-C1A, Honorable Thomas C. West, Presiding

August 16, 2023

## MEMORANDUM OPINION

### Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

Appellant, Ovidiu Tunas, appeals[1] from the trial court's denial of his application for writ of habeas corpus relief under article 11.072 of the Texas Code of Criminal Procedure.[2] Appellant contends the trial court erred by failing to find his trial attorneys Susan Kelly and Joseph Marcee (hereinafter, collectively referred to as Counsel) rendered ineffective assistance for (1) failing to object to the hearsay statements of two witnesses regarding the sexual assault allegations of complainant B.B. against Appellant,

---

[1] This appeal was originally filed in the Tenth Court of Appeals and was transferred to this Court by a docket-equalization order of the Supreme Court of Texas. See TEX. GOV'T CODE ANN. § 73.001. In the event of any conflict, we apply the transferor court's case law. TEX. R. APP. P. 41.3.

[2] See TEX. CODE CRIM. PROC. ANN. art. 11.072 (habeas corpus procedure in community supervision case).

(2) failing to seek admission of five photographs on Due Process and Confrontation Clause grounds, and (3) Counsel's allegedly deficient performance. We affirm the trial court's order.

**Background**

We stated the facts of the underlying case in *Tunas v. State,* No. 07-15-00262-CR, 2017 Tex. App. LEXIS 6708, at *1–3 (Tex. App.—Amarillo July 19, 2017, pet. ref'd) (mem. op., not designated for publication). By a January 2012 indictment, Appellant was charged with four counts of aggravated sexual assault of a child and six counts of indecency with a child by contact. The indictment alleged B.B. was the victim of all ten offenses, and alleged they occurred on or about dates in May 2005. Trial commenced in April 2015. Appellant pleaded not guilty. The State abandoned two of the counts alleging indecency with a child. The jury acquitted Appellant of all the sexual assault counts and two of the remaining indecency counts. Therefore, of the eight counts listed in the court's charge, the jury only found Appellant guilty of count III, which alleged he touched the victim's breast, and count IV, which alleged he caused her to touch his genitals with her hand.

B.B., age 23 at the time of trial, testified she moved to the United States with her family in 2005 when she was 13. Her family stayed with Appellant's family for a short time; B.B. became friends with Appellant's daughter, Alexandra. B.B. testified that one Saturday, she was at her family's apartment. Appellant came by to give a ride to the girl's brothers. Appellant left the apartment, but later reappeared and began "kissing on" her. According to B.B., Appellant picked her up, put her on the bed, and forced his fingers and penis inside her. She told the jury Appellant "touched my breast too. I had a sports bra

2

on, so he put his hand under my shirt and touched." During cross-examination, B.B. stated, "I know he touched my breasts for sure with his hands."

B.B. testified to additional acts of sexual assault that occurred a few weeks later when she went to Appellant's home for a sleepover with Appellant's daughter. She testified she woke up when Appellant tried to put his penis in her mouth. Appellant led B.B. to his bedroom. She told the jury Appellant touched her vagina and then took her hand and moved it to his penis. Appellant then kissed B.B.'s breast and put his penis inside her.

After its verdict and hearing punishment evidence, the jury assessed punishment of ten years of confinement for each count and a fine of $5,000 for count III. The trial court suspended Appellant's sentences in favor of community supervision. The conditions of community supervision included confinement in the county jail for 180 days.

In May 2022, Appellant filed his application for habeas relief with the trial court. The State answered and the trial court ordered Counsel to file an affidavit addressing "Whether trial counsel rendered ineffective assistance when they failed to object to the hearsay statements of Steven Bowles and Jesse Schocke regarding [B.B.'s] sexual assault allegations against Applicant." Counsel filed an affidavit and thereafter the court rendered a written order, containing findings of fact and conclusions of law, denying Appellant's application for habeas relief. This appeal followed.

**Analysis**

**Applicable Law**

Code of Criminal Procedure Article 11.072 is the "exclusive means by which district courts may exercise their original habeas jurisdiction under Article V, Section 8, of the Texas Constitution in cases involving an individual who is serving a term of community supervision." *Ex parte Torres,* 483 S.W.3d 35, 42 (Tex. Crim. App. 2016) (citation omitted). The trial judge is the sole finder of fact in this proceeding. *Id.* (citation omitted). Therefore, in conducting our review of the trial court's decision, we afford almost total deference to that court's factual findings when supported by the record, particularly when those findings are based on credibility and demeanor. *Ex parte Torres,* 483 S.W.3d at 42 (citations omitted). We review de novo the court's resolution of mixed questions of law and fact that do not turn on witness credibility and its resolution of pure questions of law. *Ex parte Castaneda,* No. 03-17-00336-CR, 2018 Tex. App. LEXIS 1447, at *3 (Tex. App.—Austin Feb. 23, 2018, no pet.) (mem. op., not designated for publication). In reviewing a trial court's decision to grant or deny habeas relief, we review the facts in the light most favorable to the court's ruling and, in the absence of an abuse of discretion, must uphold the ruling. *Id.* at *3–4 (citing *Ex parte Wheeler,* 203 S.W.3d 317, 324 (Tex. Crim. App. 2006); *Kniatt v. State,* 206 S.W.3d 657, 664 (Tex. Crim. App. 2006)).

Claims of ineffective assistance of counsel form an exception to the general rule that relief by habeas corpus is not available for claims that could have been presented on direct appeal. *Ex parte Nailor,* 149 S.W.3d 125, 130 (Tex. Crim. App. 2004) ("Claims of ineffective assistance of counsel are frequently raised on direct appeal without the benefit of an adequate record and then re-urged on a writ of habeas corpus after they have been

adequately developed in a post-conviction evidentiary hearing."). As the applicant, Tunas shoulders the burden of proving ineffective assistance of trial counsel by a preponderance of the evidence. *See Ex parte Martinez,* 330 S.W. 3d 891, 901 (Tex. Crim. App. 2011). He must satisfy two prongs of the standard set forth in *Strickland v. Washington,* 66 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *Id.* at 900. If the applicant fails to make a showing under either prong, his claim for ineffective assistance must be denied. *Rylander v. State,* 101 S.W.3d 107, 110 (Tex. Crim. App. 2003).

Because the first prong is dispositive of Appellant's issues on appeal, we discuss only it here. At the outset, the applicant must prove his counsel's conduct was objectively deficient. *Pate v. State,* No. 07-15-00397-CR, 2017 Tex. App. LEXIS 8447, at *13 (Tex. App.—Amarillo Sept. 6, 2017, pet. ref'd) (citing *Ex parte Nailor,* 149 S.W.3d 125 (Tex. Crim. App. 2004)). We determine whether counsel was acting as "a reasonably competent attorney" would under the circumstances. *Id.* (citing *Strickland,* 466 U.S. at 687). It is the Applicant's burden to overcome a "strong presumption that counsel's performance fell within the wide range of reasonable professional assistance." *Id.* (citation omitted). If there is a potentially reasonable strategy behind counsel's decisions, the challenged performance cannot be deficient. *See Andrews v. State,* 159 S.W.3d 98, 101 (Tex. Crim. App. 2005) ("[W]e commonly assume a strategic motive if any can be imagined and find counsel's performance deficient only if the conduct was so outrageous that no competent attorney would have engaged in it.").

**First Issue**

Appellant argues Counsel rendered ineffective assistance by failing to object to the hearsay statements of Steven Bowles and Jesse Schocke regarding B.B.'s sexual assault

5

allegations against Applicant. These written statements were admitted during the examination of the State's first witness, Detective Steve Sprung. Detective Sprung testified during direct examination that B.B.'s accusations had been corroborated by her statements to Bowles and Schocke.

During the habeas proceedings, trial counsel offered affidavit evidence that admission of the written recollections were intended to minimize their impact before B.B. offered her direct testimony. The defense theory of the case was that "the complainant was not credible because she was a troubled young woman who mentioned various vague versions of abuse at times when she was under stress and pressure. She also would have been motivated to punish [Appellant] because the families had become estranged over the years." Per the trial court, this strategy was to show B.B.'s lack of credibility by revealing when, why, what, and to whom B.B. chose to make statements. Counsel also pointed out that the statements were likely to have been admitted anyway because once "the defense attacks the credibility of a State's witness either through impeachment or even in opening statement, the State may rehabilitate the attacked witness with evidence of good character for truthfulness under Rule 608." The trial court noted its agreement in its findings of fact.

Ultimately, the trial court found counsel had pursued a reasonable trial strategy regarding the outcry statements complainant made to Bowles and Schocke. We agree that the evidence supports the findings. Even if the statements would not have otherwise been admissible, because of B.B.'s age, and even if inadmissible as a prior consistent statement under Rule of Evidence 801(e)(1)(B), as Appellant argues, they might

6

nevertheless have come in under Rule of Evidence 107,[3] the rule of optional completeness, given Appellant's strategy of attacking B.B.'s credibility. Faced with this Hobson's Choice, Counsel chose to minimize the sting of the statements by admitting them at an early stage of trial. Based on the record, we are unable to say that Counsel's strategy was unreasonable. We conclude the trial court did not err in failing to find Counsel's performance deficient on the first habeas ground.

**Second Issue**

Appellant next argues Counsel rendered ineffective assistance by failing to seek admission of five photographs on Due Process and Confrontation Clause grounds. The photographs were intended to impeach B.B.'s testimony that she did not return to Appellant's house after the May 2005 assaults.

Appellant's daughter testified B.B. spent the night with her on numerous occasions during 2005 and 2006 and was at her home for her birthday party in 2007. While testifying, Alexandra was shown eight photographs. She identified six of them as photographs she took of B.B. in her bedroom during 2006. Another, Alexandra identified as a photograph of herself; also apparently taken in her room in 2006. Alexandra identified the eighth photograph as a "selfie" she and B.B. took in July 2006, also apparently taken in her room. When Appellant offered the eight photographs for admission into evidence, the trial court sustained the State's objection to five of them on relevance and Rule of Evidence 403 grounds. The three admitted photographs show B.B. in Alexandra's room, the "selfie" of B.B. and Alexandra, and the picture of Alexandra.

---

[3] TEX. R. EVID. 107; *see Bezerra v. State,* 485 S.W.3d 133, 141–42 (Tex. App.—Amarillo 2016, pet. ref'd) (finding after defendant's questioning of officer at trial opened the door, under Rule 107 State was able to more fully and fairly explain matters about which the officer testified through videotaped interviews of the complainants which defendant argued were hearsay).

Each of the three photographs bears a date stamp in June or July 2006 (over a year after B.B. said she last visited) and depict B.B. with Alexandra, under apparently happy circumstances. They also reiterate B.B. was in Appellant's home with Alexandra after the time B.B. testified she ceased going there. *Tunas,* 2017 Tex. App. LEXIS 6708, at *10–11.

It is unclear how Appellant posits the additional photographs would have provided additional relevant information for the jury. The excluded photographs show B.B. in more provocative attire. Appellant's daughter referred to them as "silly pictures"; Appellant argued to the trial court that they merely depicted two teenaged girls acting as such. We previously observed that the admitted photos served Appellant's purpose without the potential to inflame, distract or confuse the jury, nor did the admitted photos risk that the jury would focus on B.B.'s conduct instead of Appellant's alleged conduct. *Tunas,* 2017 Tex. App. LEXIS 6708, at *11.

Appellant likewise does not explain how an asserted reference to Due Process or Confrontation Clause grounds would have changed the trial court's ruling on admissibility. Nor do we see an argument of how these additional photographs would have more completely impeached B.B.'s testimony than through the admitted testimony of Appellant's daughter and the other photographs. These excluded photos were but a reiteration of those admitted which served Appellant's purpose. *See United States v. Scheffer,* 523 U.S. 303, 308, 118 S. Ct. 1261, 140 L. Ed. 2d 413 (1998) (noting the Court has "found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused."); *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986) (explaining that the Confrontation Clause does not prevent a trial court from reasonably limiting cross-

8

examination based on concerns of inter alia confusion of issues or interrogation that is repetitive). Counsel cannot be branded ineffective for failing to undertake a meritless or futile act. *See Adams v. State,* No. 02-18-00147-CR, 2018 Tex. App. LEXIS 5793, at *9 & n.18 (Tex. App.—Fort Worth July 26, 2018, pet. ref'd) (mem. op., not designated for publication). And we find no evidence that would warrant disagreeing with the trial court's findings on this issue. We conclude the trial court did not err in failing to find Counsel's performance deficient on the second habeas ground.

**Third Issue**

Via his third issue, Appellant argues the trial court erred by overall failing to find Appellant was prejudiced due to Counsel's ineffective assistance. But as noted above, we have rejected Appellant's arguments that Counsel's decisions were deficient. Because the trial court did not err in concluding Counsel's performance did not fall below the standards required by the Sixth Amendment, it is unnecessary to speculate whether Appellant was prejudiced by Counsel's performance. *See Garcia v. State,* 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) (explaining that "an Appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong."). *See* TEX. R. APP. P. 47.1.

## Conclusion

Having overruled Appellant's issues necessary for the disposition of this appeal, we affirm the order of the trial court.

Lawrence M. Doss
Justice

Do not publish.