

# NUMBER 13-24-00264-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## EX PARTE LUIS CORTINA

### ON APPEAL FROM THE 139TH DISTRICT COURT
### OF HIDALGO COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices West and Fonseca**
**Memorandum Opinion by Chief Justice Tijerina**

Appellant Luis Cortina pleaded guilty to aggravated sexual assault of a child, a first-degree felony, and he was placed on ten years' deferred-adjudication community supervision. *See* TEX. PENAL CODE ANN. § 22.021(A). By his sole issue on appeal, Cortina argues that the trial court erred by denying his application for writ of habeas corpus due to ineffective assistance of counsel. We affirm.

### I.   BACKGROUND

On June 1, 2013, Cortina was arrested on charges of continuous sexual abuse of a young child, two counts of aggravated sexual assault of a child, and two counts of sexual

assault. *See id.* § 22.021. He was indicted on February 27, 2018, and released on bond. On January 18, 2024, pursuant to a plea agreement, Cortina pleaded guilty to aggravated sexual assault of a child. The State dismissed the remaining charges, and the trial court deferred adjudication and placed Cortina on community supervision for ten years. Thereafter, Immigration and Customs Enforcement took Cortina into its custody, and Cortina is currently pending removal.

On April 3, 2024, Cortina filed an application for writ of habeas corpus on the grounds that he was provided ineffective assistance of counsel. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072. According to Cortina, because his trial counsel failed to advise him "that as a direct consequence of his plea he would automatically be subject to deportation/removal from the United States . . . his plea of guilty was not knowingly, intelligently, and voluntarily entered."

The trial court conducted an evidentiary hearing on Cortina's application for writ of habeas corpus. Cortina's trial counsel, Cortina, and Cortina's wife Stephanie Cortina testified at the habeas hearing.

Trial counsel testified that Cortina was facing up to life imprisonment and that Cortina's "primary focus" was to stay out of prison. Although Cortina was concerned about his immigration consequences, trial counsel reiterated that Cortina's primary goal was to avoid a prison sentence. Trial counsel admitted that he "had no reason to believe [Cortina] was going to be picked up by the federal government."

The trial court stated that Cortina attended twenty-three different hearings, and it "talked to him about the consequences" of his guilty plea "more than once." Specifically, the trial court stated: "I talked to him about it and I was very clear when I talked to him

2

about it. Not once but a couple of times I talked to him about the immigration consequences [of pleading guilty,] and he understood. He didn't say, I don't understand."

Cortina testified that before he entered his guilty plea, he asked trial counsel at least four times if it would affect his immigration status. According to Cortina, trial counsel informed him that there was a "50 percent chance" he would be deported, "so [he] took it." Cortina insisted that had he known he would be deported, he would not have pleaded guilty. In fact, Cortina expressed that he would rather have faced life in prison from the jury than face the consequences in immigration court. Yet, Cortina stated that when the trial court admonished him about the consequences of his guilty plea, he still agreed to plead guilty because he did not "want to go to prison. And [he] just wanted to be out on probation and keep going on with [his] life and stay on probation and keep working."

Stephanie testified that she, too, asked trial counsel about Cortina's immigration consequences—most recently right before his guilty plea. According to Stephanie, trial counsel asked Cortina how many years Cortina had resided in the United States to which Cortina responded, "over 20 years." Stephanie stated that trial counsel responded, "You should be fine then."

The trial court denied Cortina's application for writ of habeas corpus and issued findings of fact and conclusions of law. This appeal followed.

## II.  INEFFECTIVE ASSISTANCE OF COUNSEL

Cortina argues that his guilty plea was rendered unintelligently, unknowingly, and involuntarily due to his trial counsel's failure to advise him that his guilty plea would subject him to mandatory deportation.

3

**A.      Applicable Law**

"Article 11.072 is 'the exclusive means by which the district courts may exercise their original habeas jurisdiction under Article V, Section 8, of the Texas Constitution' in cases involving an individual who is serving a term of community supervision." *Ex parte Torres*, 483 S.W.3d 35, 42 (Tex. Crim. App. 2016) (quoting *Ex parte Villanueva*, 252 S.W.3d 391, 397 (Tex. Crim. App. 2008)). In an Article 11.072 proceeding, the trial court is the sole finder of fact, and "we afford almost total deference to a trial court's factual findings when they are supported by the record, especially when those findings are based upon credibility and demeanor." *Id.* An applicant "bears the burden of proving his claim by a preponderance of the evidence." *Id.* at 43.

To be entitled to post-conviction relief based on ineffective assistance of counsel, an applicant must demonstrate that (1) trial counsel's performance was deficient, in that it fell below an objective standard of reasonableness, and (2) prejudice as a result of trial counsel's errors, in that but for these errors, there is a reasonable probability of a different outcome. *Id.*; *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984). In a collateral challenge to a guilty plea, the focus of the prejudice inquiry is whether trial counsel's ineffective performance affected the outcome of the plea process, and whether an applicant has shown, but for trial counsel's errors, the applicant would not have pleaded guilty and would have insisted on going to trial. *Ex parte Torres*, 483 S.W.3d at 47.

**B.      Discussion**

Cortina argues his counsel was ineffective due to his "complete failure to advise him that the conviction would render him an aggravated felon for immigration purposes, subjecting him to mandatory deportation and his unavoidable inability to maintain permanent residency immigration status in the United States." However, we need not

address the deficient-performance prong of the *Strickland* analysis because Cortina cannot "show a reasonable probability that [trial] counsel's errors affected the outcome of the plea proceedings, in the sense that, but for [trial] counsel's errors, the applicant would have rejected the plea bargain and instead pursued a trial." *Id.* at 46.; *see Strickland*, 466 U.S. at 670 ("A court need not first determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed."); *Cox v. State*, 389 S.W.3d 817, 819 (Tex. Crim. App. 2012) (concluding that a reviewing court need not consider both prongs of the *Strickland* test and can dispose of an ineffectiveness claim if the defendant fails to demonstrate sufficient prejudice).

In this case, there was evidence that Cortina mainly desired to avoid a conviction and jail time. *See id.* at 49 (observing that nowhere in appellant's affidavit or in his pleadings to the habeas court did he mention his concern for potential immigration consequences and instead focused on his desire to avoid conviction and jail time). Trial counsel testified that Cortina's goal was to stay out of prison, and his duty as trial counsel was to achieve that goal. Additionally, habeas counsel asked Cortina why he still decided to plead guilty after the trial court had admonished him that pleading guilty may result in his removal from the United States. Cortina responded, "Because I did not want to go to prison. And I just wanted to be out on probation and keep going on with my life and stay on probation and keep working." Thus, the totality of circumstances indicate that, in his communications with trial counsel, Cortina placed a greater emphasis on avoiding prison time rather than his immigration consequences, which does not weigh in favor of finding prejudice. *See id.* at 48–49.

5

Moreover, in its findings of fact, the trial court found that Cortina's "after-the-fact contention that in other circumstances he would have proceeded to trial is self-serving and wholly lacking in credibility." We agree, and we defer to the trial court's factual findings that by taking the State's plea agreement Cortina avoided a mandatory minimum sentence of twenty-five years' imprisonment, potential life imprisonment, and potential twenty years' imprisonment. *See id.* at 50; *see also Ex parte Martin*, No. 01-17-00025-CR, 2019 WL 2292631, at *9 (Tex. App.—Houston [1st Dist.] May 30, 2019, no pet.) (mem. op., not designated for publication) ("Compared to the punishment risked at trial, the plea bargain's terms were significantly more favorable. Martin did not present any evidence showing that another plea deal would have helped him avoid negative immigration consequences."). By taking the plea deal, Cortina avoided the certainty of a term of imprisonment upon conviction, as community supervision was not possible, and the sentences could have been ordered to run consecutively rather than concurrently. *See Ex parte Villanueva*, 252 S.W.3d at 397.

The trial court's conclusion that proceeding to trial would not have been rational is supported by the facts that Cortina confessed to a first-degree felony offense; that his primary concern at the time of his arrest and plea was staying out of prison; that the trial court admonished him about how his immigration status would be impacted by his plea; and that Cortina's plea paperwork included an immigration-consequences admonishment initialed by Cortina. Based on these facts, the record

> makes it appear unlikely that, had appellant been correctly advised that he was subject to mandatory deportation, as opposed to the advice he received regarding a mere risk of deportation, the correct advice would have been the tipping point that would have caused him to reject the plea bargain and avail himself of a trial, thereby risking imprisonment and eventual deportation following a conviction at trial.

*Ex parte Torres*, 483 S.W.3d at 50.

Moreover, the record is "devoid of any suggestion that [Cortina] had a possible defense to prosecution" on any of his charges, the punishment of which is up to life imprisonment. *Id.* at 51; *see also Ex parte Martin*, 2019 WL 2292631, at *9 ("Martin failed to assert any actual defense and no affirmative evidence of factual or legal defenses was presented to the habeas court. Moreover, there is no evidence in the record that Martin believed that he was not guilty of the offense."). Instead, the habeas court found that "[w]hile the outcome of trial is always uncertain, nothing before the [habeas c]ourt provided a basis for believing there existed a high likelihood of acquittal by a jury." Thus, Cortina's plea bargain allowed him to entirely avoid jail time and additionally provided for the dismissal of other felony charges, including continuous sexual assault of a child, aggravated sexual assault of a child, and two counts of sexual assault of a child. *See* TEX. PENAL CODE ANN. §§ 21.02(h), 22.011(f), 22.021(e); *see also Ex parte Hurtado*, No. 13-16-00512-CR, 2017 WL 3084287, at *4 (Tex. App.—Corpus Christi–Edinburg Jul. 20, 2017, no pet) (mem. op., not designated for publication) ("The surrounding circumstance of available evidence, the possibility of a sixty-year prison sentence, and the unpredictability of a jury decision lead us to conclude that, even assuming trial counsel acted deficiently, such alleged misadvice did not prejudice appellant's plea."); *Ex parte Martin*, 2019 WL 2292631, at *10 ("The record in this case establishes that there is no reasonable probability that, had Rosen informed Martin of the immigration consequences of his guilty plea, Martin would have rejected the State's plea offer, pleaded not guilty, and insisted on taking his case to trial, and that it would have been rational for Martin to have done so.").

As a result, Cortina has failed to present facts that adequately demonstrate prejudice. "In view of the totality of the record, and deferring to the trial court's factual findings, we conclude that appellant has failed to demonstrate that, but for counsel's errors, he would have rejected the plea bargain and pursued a trial. His claim of prejudice, therefore, fails." *Ex parte Torres*, 483 S.W.3d at 49.

In view of the lack of any evidence from Cortina as to how he was prejudiced and in the absence of any credible facts in the record showing that, but for counsel's erroneous advice, Cortina would have rationally decided to reject the plea bargain and instead pursue a trial. *See id.* at 51. We overrule Cortina's sole issue.[1]

### III.   CONCLUSION

We affirm the judgment of the trial court.

JAIME TIJERINA
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
7th day of August, 2025.

---

[1] On September 19, 2024, the State filed a motion to strike the appendix to Cortina's second amended brief. We hereby grant the State's motion, and we do not consider the documents referenced in Cortina's appendix that were not before the trial court. *See Gonzalez v. Villarreal*, 251 S.W.3d 763, 777 (Tex. App.—Corpus Christi–Edinburg 2008, pet. dism'd) ("An appellate court cannot consider documents cited in a brief and attached as appendices if they are not formally included in the record on appeal.").