**Opinion filed May 12, 2022**



In The

# Eleventh Court of Appeals

_____

## No. 11-20-00171-CR

_____

## EX PARTE JULIO BAQUEDANO-CARDENAS

**On Appeal from the County Court at Law No. 1**
**Taylor County, Texas**
**Trial Court Cause No. 1-430-20**

## MEMORANDUM OPINION

The Sixth Amendment requires that an attorney who represents a noncitizen in a criminal proceeding must advise the defendant of the direct consequences of his plea to the charged offense—namely, that the offense to which he is pleading guilty, or as in this case, no contest, will result in his removal from the United States. *Padilla v. Kentucky*, 559 U.S. 356, 360 (2010). This appeal from the denial of an application for writ of habeas corpus concerns the alleged failure of an attorney to fulfill that requirement.

Prior to the genesis of this appeal, Appellant, Julio Baquedano-Cardenas, was a lawful permanent resident in the United States. Appellant was eventually charged by citation with a Class C misdemeanor drug offense, to which he later entered a plea of no contest. As a condition of his negotiated plea agreement with the State, Appellant received deferred disposition. He successfully completed the required deferred disposition term, and the drug charge was subsequently dismissed.

Approximately three years later, Appellant filed an application for a writ of habeas corpus and claimed that his trial counsel was ineffective because his counsel had not adequately informed Appellant of the consequences of his no contest plea—namely, that his plea would affect his lawful permanent resident status. Article 11.072 of the Texas Code of Criminal Procedure provides an avenue for a person to file a writ of habeas corpus and seek relief from a judgment of conviction that ordered community supervision. TEX. CODE CRIM. PROC. ANN. art 11.072 (West Supp. 2021). After a hearing and considering the evidence presented, the trial court denied Appellant's request for habeas relief. On appeal, Appellant (1) challenges the trial court's finding that laches bars his habeas claim, (2) contends that he received ineffective assistance of counsel, and (3) contests the State's assertion that Appellant should have been on notice of the immigration consequences of his plea. We affirm.

I. *Factual Background*

In February 2017, Appellant was charged by citation with the Class C misdemeanor offense of possession of drug paraphernalia. On April 12, 2017, Appellant entered a plea of no contest to the charged offense in a Taylor County justice court. After this matter was appealed to the County Court at Law No. 1, a ninety-day deferred disposition term and a $200 fine were imposed. On May 26, 2020, Appellant filed a writ of habeas corpus alleging that he received ineffective assistance of counsel. Four witnesses testified at the habeas hearing: Appellant, his

trial counsel, his trial counsel's legal assistant, and the justice of the peace who presided over Appellant's underlying proceeding.

A. *Appellant's Testimony*

Appellant has been a permanent resident of the United States since he was twelve or thirteen. He testified that he first contacted his trial counsel's law firm by telephone. Appellant decided to search for an attorney in the Abilene area on Google Maps because he was from Dallas and unfamiliar with the area. Appellant ultimately contacted the firm of Jeffrey Galbreath, a local attorney in Abilene. He spoke to a paralegal in Galbreath's firm about his case, Dena Rodriguez Thorne, over the course of several telephone calls. According to Appellant, he did not believe that he spoke to anyone else at Galbreath's firm about his case other than Dena.

Appellant was certain that, throughout his discussions with Dena, he had mentioned his citizenship status to her—he was a lawful permanent resident. He claimed that the identification he provided to Galbreath's firm—and the only identification he possessed—was his permanent resident card. Appellant testified that he and Dena did not specifically discuss that the outcome of his case could affect his immigration status. However, based on their discussions, this case appeared to be similar to other situations that he had experienced in the past, such as driving without a license, which had not affected his immigration status. After a plea agreement was negotiated, Appellant signed the plea papers electronically and immediately returned them to Galbreath's firm. Although Appellant only recalled speaking to Dena, when he was asked if he believed Dena was an attorney, he replied: "There was no reason for me to doubt that she wasn't an attorney."

Appellant further testified that he "absolutely" would not have agreed to enter a plea of no contest to the charged offense if he had known his plea would have negatively affected his immigration status. He also reiterated that he had mentioned his status as a permanent resident to Dena during his initial consultation with her.

3

Appellant submitted an affidavit from an immigration attorney that indicated that, due to the drug paraphernalia offense for which Appellant was charged in this case, he could no longer effectively leave and later reenter the United States. According to the immigration attorney's affidavit, because of Appellant's plea of no contest, if Appellant were to leave the United States even for an emergent reason, such as to visit a dying relative, he would be required to apply for admission to reenter the country.

Appellant stated that he retained his habeas counsel about a year after the disposition of the underlying charge, and he agreed that the hearing on his habeas application did not occur until two years later. Appellant admitted that he had previously been convicted of a Class B misdemeanor offense (driving with an invalid license). For that charge, Appellant could not recall whether he was admonished during the pendency of that case regarding the consequences of his plea and how it would affect his immigration status, although he believed it was likely that he was.

B. *Dena Rodriguez Thorne's Testimony*

Dena Rodriguez Thorne is a part-time paralegal or legal assistant for Appellant's trial counsel, Jeffrey Galbreath. She has worked in the legal profession in similar capacities for thirty-two years.

An affidavit executed by Dena was first submitted in which she indicated that she had no memory of what had occurred in Appellant's case. However, she testified at the habeas hearing that after she reviewed Appellant's affidavit, she recalled Appellant's case because it involved a misdemeanor drug paraphernalia charge. Dena agreed that she had known Appellant was a lawful permanent resident since the commencement of her contact with him and she stated multiple times that she had informed Galbreath of this fact. She testified: "I did tell [Appellant] that he would need to speak with an immigration attorney as [the plea] could affect his status. It's always protocol for me to say that." She stated that it was an established

4

policy at Galbreath's firm, and it was also a policy at other firms where she had worked, to inform a noncitizen client to seek independent legal advice concerning how a plea to a criminal offense would affect the client's immigration status.

Dena further testified that Appellant's case file did not contain a call log and that she possessed no e-mails generated between the two of them to show that she had advised him to consult an immigration attorney. However, she did note that one of the e-mails attached to Appellant's affidavit was an e-mail forwarded from Galbreath as "attorney at law."

According to Dena, after she initially mentioned the need for Appellant to consult an immigration attorney, Appellant never inquired about or mentioned the subject again. Dena stated that Appellant's primary concern was to assure that the drug paraphernalia charge would not appear on his record. She also stated that Appellant did not mention or discuss any other concern he might have about the case or his circumstances. Dena agreed that Appellant did not speak with Galbreath or another attorney at Galbreath's firm. According to Dena, in her experience as a legal assistant, this was the normal practice and protocol when a person engaged an attorney or a law firm to handle the disposition of a traffic citation, such as Appellant's charge. She claimed that she has a good reputation in Taylor County and has always been diligent in informing noncitizen clients of their need to consult an immigration attorney before making a plea decision.

C. *Judge Sparky Dean's Testimony*

Judge Sparky Dean is the presiding judge of the Taylor County Justice Court, Precinct One. Prior to this position he was a state trooper for the Texas Department of Public Safety (DPS) for thirty-five years.

Appellant's drug paraphernalia citation was assigned to Judge Dean's court, and he knew the trooper who issued the citation to Appellant. Evidently, the trooper moved from the Abilene area to Amarillo in 2017. Judge Dean testified that he

5

attempted to locate the records concerning Appellant's citation, but it appeared that the records had been expunged. He further stated that he received a notice of the expunction concerning Appellant, which applied only to the drug paraphernalia portion of the citation, on November 30, 2018; he then proceeded to destroy the records. He explained that he still has the citation that Appellant was issued, a single piece of paper that indicates Appellant was cited for speeding and drug paraphernalia.

According to Judge Dean, the DPS evidence retention policy that was in effect at the time Appellant was cited, specifically for evidence that pertains to a Class C misdemeanor offense, was to retain the evidence for ninety days; however, that policy changed in 2017 to require retention of the evidence for three years.

D. *Attorney Jeffrey Galbreath's Testimony*

Jeffrey Galbreath has been a licensed attorney in Texas since 2001. He testified that his firm, as well as another firm where he had worked, always maintained a policy of referring noncitizen clients to an immigration attorney for independent legal advice. Galbreath recommends this to all noncitizen clients because he does not practice and is not well-versed in immigration law. He testified that his staff is aware of this policy and that Dena's testimony, and the manner in which she handled Appellant's case, was in accordance with his firm's policy. Galbreath stated that he had never known Dena to violate or fail to comply with this policy.

Galbreath testified that he did not recall if he ever had any personal contact with Appellant, although he believed it was unlikely. He stated that Dena did inform him that Appellant was a lawful permanent resident. Nevertheless, it is standard practice at his firm and other law firms that are retained to dispose of Class C misdemeanor offenses, such as Appellant's, for the attorney-in-charge to not meet or have personal or other face-to-face contact with the client.

After hearing the evidence presented and the arguments of counsel, the trial court denied Appellant's writ application. Upon Appellant's request, the trial court entered findings of fact. This appeal followed.

## II. *Analysis*

We review the trial court's ruling on a habeas application under an abuse of discretion standard. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006); *see also Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006). An applicant seeking postconviction habeas relief, like Appellant in this case, bears the burden to establish by a preponderance of the evidence that the facts entitle him to the relief he requests. *Ex parte Torres*, 483 S.W.3d 35, 43 (Tex. Crim. App. 2016); *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002). We view the evidence presented in the habeas proceeding in the light most favorable to the trial court's ruling. *Kniatt*, 206 S.W.3d at 664; *Wheeler*, 203 S.W.3d 324. The trial court is the sole finder of the facts, and we must afford almost total deference to the trial court's findings of fact when those findings are supported by the record, especially when those findings are based on demeanor and credibility assessments. *Torres*, 483 S.W.3d at 42; *State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013) (applying the standard from *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)); *Ex parte Garcia*, 353 S.W.3d 785, 788 (Tex. Crim. App. 2011) (same).

In his first issue, Appellant challenges the trial court's finding that laches bars Appellant's writ application. The doctrine of laches is defined as "neglect to assert [a] right or claim which, taken together with [the] lapse of time and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity." *Ex parte Smith*, 444 S.W.3d 661, 666 (Tex. Crim. App. 2014) (quoting BLACK'S LAW DICTIONARY 875 (6th ed. 1990)). "[T]he writ of habeas corpus is an extraordinary remedy, any grant of which must be underscored by elements of fairness and equity." *Id.* (alteration in original) (quoting *Ex parte Perez*, 398 S.W.3d

206, 216 (Tex. Crim. App. 2013)). Because laches concerns a question of fact, we determine whether it attaches on a case-by-case basis. *Ex parte Bowman*, 447 S.W.3d 887, 888 (Tex. Crim. App. 2014); *Smith*, 444 S.W.3d at 666–67. In making this determination in a habeas context, we consider (1) the length of the applicant's delay in requesting habeas relief, (2) the reasons for the delay, and (3) the degree and type of prejudice borne by the State resulting from the delay. *Smith*, 444 S.W.3d at 666–67. We may excuse an applicant's delay when the record demonstrates that his delay was the result of a justifiable excuse or excusable neglect based on the totality of the circumstances. *Smith*, 444 S.W.3d at 670.

Here, Appellant was first placed on deferred disposition on April 12, 2017, and, after he appealed this matter to the county court at law, that court adopted the terms of Appellant's agreed deferred disposition on June 26, 2017. Appellant filed his writ of habeas corpus application on May 26, 2020, nearly three years later. Although Appellant's habeas attorney has been involved in Appellant's pursuit of habeas relief since at least November 30, 2018, Appellant offered no explanation for the almost three-year delay from when his deferred disposition was originally imposed until the time that he filed his writ application.

The trial court made the following factual findings, in addition to others, to which we defer because each finding is supported by the record: (1) the justice court received a notice of expunction on November 30, 2018, which was well after Appellant had completed his ninety-day deferred disposition term; (2) the justice court destroyed its records of Appellant's drug paraphernalia charge pursuant to the expunction notice that Appellant's attorney had requested; (3) in 2017, DPS changed its policy on evidence retention for Class C misdemeanor citations, from ninety-days to three years; (4) by the time Appellant's habeas application was filed, over three years had passed since the issuance of Appellant's misdemeanor citation; and (5) the state trooper who issued the citation had moved from the Abilene area in 2017.

8

In sum, Appellant did not file his writ application until nearly three years after his misdemeanor drug paraphernalia charge had been dismissed. Further, he did not offer any reasons whatsoever for his delay or lack of diligence in filing his writ application. In the meantime, under an expunction notice that Appellant had pursued, the justice court destroyed the evidence of the underlying offense, which had been preserved, in accordance with DPS policy. Although the two critical witnesses that testified at the habeas hearing, Appellant and Dena, did not remember certain details of their interactions because of the passage of time, they both claimed to recall the most crucial details. We have thoroughly reviewed the record and hold that, based on the totality of the circumstances, the trial court did not abuse its discretion when it found that Appellant's habeas claim was barred by laches. Accordingly, we overrule Appellant's first issue.

In his second issue, Appellant contends that the trial court abused its discretion when it found that Galbreath was not ineffective because, according to Appellant, Galbreath not only failed to provide effective assistance of counsel, he actually provided no assistance whatsoever because he never communicated with Appellant directly. On these facts, we disagree with both assertions.

To prevail on his ineffective-assistance-of-counsel claim, Appellant was required to establish that (1) Galbreath's performance was deficient because it fell below an objective standard of reasonableness, (2) Appellant was prejudiced as a result of Galbreath's deficient performance, and (3) but for Galbreath's deficient performance, there is a reasonable probability that the outcome of Appellant's case would have been different. *Torres*, 483 S.W.3d at 43 (citing *Strickland v. Washington*, 466 U.S. 668, 687, 693 (1984)). In the context of this case, which constitutes a collateral challenge to Appellant's plea of no contest, the focus of our prejudice inquiry is twofold: (1) whether Galbreath's purported deficient performance affected the outcome of Appellant's plea process; and (2) whether

9

Appellant has established that, but for Galbreath's alleged deficiencies, Appellant would not have pleaded no contest to the charged offense and, instead, would have insisted on proceeding to trial. *Id.* at 43.

Galbreath testified that it is his firm's policy to advise all noncitizen clients to consult with an immigration attorney to determine what effect a guilty plea or a no contest plea could have on their immigration status. Galbreath testified that he typically states on the record during a plea hearing that his client has been so advised.[1] He also testified that Dena is aware of this policy and has always complied with that protocol. Dena testified that in this instance, she advised Appellant to consult with an immigration attorney.[2] On the other hand, Appellant testified that he was not advised to do so by Dena or anyone else at Galbreath's firm. In its findings of fact, the trial court found the testimony of Galbreath and Dena to be credible. As we have said, we afford almost total deference to the trial court's factual findings when they are supported by the record, especially when those findings, such as in this case, are based on credibility and demeanor determinations. *See Torres*, 483 S.W.3d at 42. Here, the record before us supports the trial court's factual findings. Therefore, we hold that the trial court did not abuse its discretion when it found that Galbreath's performance was not deficient.

Nevertheless, even if the evidence did establish that Galbreath's performance was deficient, Appellant has failed to show that, but for such deficiency, he would not have pleaded no contest to the charged offense and would have, instead, insisted

---

[1]We do not have the benefit of reviewing either the plea documents that Appellant executed in the underlying case or the record from Appellant's plea hearing because those documents were not offered into evidence at the habeas hearing and are not included in the appellate record.

[2]We note that, unlike in a felony case, the *trial court* is not required to admonish a defendant about the immigration consequences of his plea if the underlying charge, such as in Appellant's case, involves a misdemeanor offense. *See Guerrero*, 400 S.W.3d at 589; *State v. Jimenez*, 987 S.W.2d 886, 888–89 (Tex. Crim. App. 1999).

on proceeding to trial. In his affidavit, Appellant stated that his status as a lawful permanent resident was the primary reason that he sought legal representation for this drug paraphernalia charge. Appellant testified that Dena had assured him that this was a simple, minor case, and he insisted that he had specifically informed Dena of his immigration status. Although Appellant did not claim in his affidavit that Dena failed to advise him that he should consult with an immigration attorney, he did advance this position when he testified at the habeas hearing. He further testified that he had previously received various Class C misdemeanor citations as well as a Class B misdemeanor charge for driving without a license. According to Appellant, he was represented by attorneys on some of those charges, and he had been paying off the imposed fines in order to have his driver's license reinstated.

Dena testified that Appellant's primary concern when she communicated with him was to prevent the drug paraphernalia charge from appearing on his driving record. Moreover, although Appellant did mention his immigration status to her during their initial telephone conversation, he never inquired about or referred to it again. According to Dena, she never mentioned whether Appellant's case was difficult or minor; she only stated that Appellant would most likely receive deferred disposition and, if he did, that the charge would eventually be dismissed.

Here, Appellant accepted a plea agreement, the terms of which ultimately prevented the charged offense from appearing on his driving record, a concern which the record shows was of primary importance to him. According to the affidavit of Appellant's immigration attorney, the immigration consequences of Appellant's no contest plea would not have resulted in Appellant's removal from the United States or the loss of his permanent resident status, but rather would have only affected his ability to reenter the United States if he departed. Such is the case here.

Based on the record before us, we hold that Appellant failed to meet his burden to establish that, even if Galbreath's performance and representation of

Appellant was deficient, he was somehow prejudiced and a reasonable probability exists that the outcome of his case would have been different but for his plea. Therefore, we cannot say that the trial court abused its discretion when it denied Appellant's habeas application. Accordingly, we overrule Appellant's second issue.

Because our holdings on Appellant's first two issues necessarily dispose of this appeal, we need not address his third issue. *See* TEX. R. APP. P. 47.1.

### III. *This Court's Ruling*

We affirm the order of the trial court.


W. STACY TROTTER

JUSTICE


May 12, 2022

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.