

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-23-01012-CR

**EX PARTE** Jose Jaime **LOPEZ**

From the 79th Judicial District Court, Brooks County, Texas
Trial Court No. 99-07-06591-CR
Honorable Richard C. Terrell, Judge Presiding

Opinion by:    Rebeca C. Martinez, Chief Justice

Sitting:    Rebeca C. Martinez, Chief Justice
Lori I. Valenzuela, Justice
Lori Massey Brissette, Justice

Delivered and Filed: March 26, 2025

AFFIRMED

Jose Jamie Lopez, proceeding pro se, appeals from an order denying his application for a writ of habeas corpus. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072, §1 ("This article establishes the procedures for an application for a writ of habeas corpus in a felony or misdemeanor case in which the applicant seeks relief from an order or a judgment of conviction ordering community supervision."). In two issues, which we re-order, Lopez complains that the habeas court erred in denying his application because (1) he "met his burden of showing that his [t]rial [a]ttorney operated and labored under an actual conflict of interest throughout [his] criminal proceedings" by representing a co-defendant and that conflict adversely affected his representation; and (2) in

denying relief, the habeas court did so "without confronting the merits of [his] conflict of interest claim." We affirm.

## I. BACKGROUND

On February 24, 1999, U.S. Border Patrol agents discovered forty-two pounds of marijuana in the gas tank of a rental car that Lopez and Israel Trevino were traveling in when they presented at the U.S. Border Patrol Checkpoint in Falfurrias, Texas. As a result, Lopez was indicted on a third-degree felony charge of possession of marijuana. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121(b)(4) (providing that possession of marijuana is "a felony of the third degree if the amount of marihuana possessed is 50 pounds or less but more than 5 pounds[.]"). Edelia Gonzalez-Lemon was appointed to represent Lopez and Trevino.

On July 23, 1999, the trial court, in accordance with a written plea bargain agreement between Lopez and the State, signed an order of deferred adjudication and placed Lopez on community supervision for three years. Meanwhile, the charge against Trevino was dismissed. The trial court signed an order discharging Lopez from community supervision on September 26, 2002.

In 2016, a federal jury in Illinois found Lopez guilty of, among other things, possession of 50 grams of methamphetamine with intent to distribute. *See United States v. Lopez*, 907 F.3d 537, 542 (7th Cir. 2018). The federal district court considered the July 23, 1999 order of deferred adjudication as a predicate "conviction" for enhancement purposes, and it sentenced Lopez to imprisonment for a mandatory life term and a concurrent term of 188 months. *Id*. at 542, 545–46. Lopez's federal conviction and sentence was affirmed by the U.S. Court of Appeals for the Seventh Circuit in 2018. *Id*. at 548.

In 2019, Lopez filed an application for writ of habeas corpus. Lopez's application argued that his trial counsel was ineffective because she: (1) failed to advise him that the order of deferred adjudication carried a potential collateral consequence if he was subsequently charged with a federal drug trafficking crime; and (2) labored under an "actual conflict of interest" because she also represented Trevino, and she negotiated an outright dismissal of the possession of marijuana charge for Trevino. Relatedly, Lopez argued the revelation that the order of deferred adjudication could be used as an enhancement of the federal drug trafficking charge constituted "newly discovered evidence." Lopez filed a declaration under penalty of perjury in which he averred in relevant part:

> Appointed counsel only met with me on the day of my hearing and she reviewed my case in a crowded hallway, with no privacy and we did not consult about the facts of my case in which I maintained that I did not have any knowledge that drugs were hidden in [the] rental car gas tank.

> Appointed counsel, Edelia Gonzalez-Lemon, was also handling other cases on the day of my hearing and our meeting[,] and I did not have time to discuss the weakness of my case and my attorney did not have time to familiarize herself with the law and facts of my case.

> Appointed [c]ounsel Edelia Gonzalez-Lemon, was also representing my co-defendant Israel Trevino, which she obtained a dismissal of charges, due to my guilty plea.

> Appointed counsel, failed to notify the court of the conflict of interest, of representing both co-defendants, which was clear by the conflicting statements given by myself and co-defendant Israel Trevino against each other.

> Appointed counsel informed me that if I declined the 3-year deferred adjudication, I would be referred to trial which could result in a more severe sentence.

> Based on the misconception that successful completion of deferred probation removes the criminal charge from my record and lack of affirmative defense to the charge of possession of marijuana[,] I accepted the deferred probation and was sentenced to 3-year[s] deferred probation.

> Had appointed counsel advised me that [I] had a viable defense and the misconception about deferred adjudication in Texas[,] I would not have plead

guilty[,] and I would have proceeded with trial and presented the more specific knowledge defense and that I was unaware of the marijuana in rented vehicle.

The habeas court ordered the State to file a written response and Gonzalez-Lemon to file an affidavit responding to the allegations in Lopez's application. In Gonzalez-Lemon's affidavit, she testified:

> I represented Jose Jaime Lopez back in 1999. I no longer have his file as it [is] more than ten (10) years old and has been destroyed. As I recall, I was court appointed to represent Mr. Lopez.
>
> . . .
>
> If Mr. Lopez did in fact plead out, I would have read and explained the plea paperwork to him. If he had questions, I would have answered them. In this paperwork, he would have signed his name stating that he was entering into his plea voluntarily and knowingly and because this is what he wanted to do.
>
> . . .
>
> [I]f Mr. Lopez was from out of state and wanted to plead out on the same day that I was appointed, then he would have had to state in open court that he was entering into a plea on the same date as his arraignment and same day as receiving his court appointed attorney because this was what he wanted to do.
>
> . . .
>
> [I]f a conflict existed in my representation of Mr. Lopez and if I was informed of said conflict, it is my procedure to discuss the conflict with my client and if my client would have wanted me to remove myself as his attorney I would have done so. I would then inform the Court of said conflict. At this point, the Court would have immediately addressed the conflict in open court with Mr. Lopez and would have removed me as his counsel if Mr. Lopez so requested or if the Court thought it would be necessary for me to be removed.

The State filed a written response.

The habeas court denied Lopez's application without conducting a hearing. The habeas court found, in relevant part, that Gonzalez-Lemon: (1) does not have any personal recollection of this case; and (2) customarily goes over all plea paperwork with the client and only proceeds with a plea if the client agrees. It concluded that:

Applicant knowingly and voluntarily entered a plea to the offense charged in this cause.

Applicant was fully informed of the consequences of his plea of guilty prior to entering the plea of guilty.

The representation of the Applicant by his trial counsel was not objectively deficient and falls within the range or professional assistance.

It is not reasonably probable that representation by a competent attorney would have led to a different outcome.

Lopez timely appeals.

## II. CONFLICT OF INTEREST

In Lopez's first issue, he contends that he met his burden of showing that his trial attorney operated and labored under an actual conflict of interest throughout his 1999 criminal proceeding by representing a co-defendant and that conflict adversely affected his representation.

### A.      Standard of Review

An applicant for an article 11.072 writ of habeas corpus bears the burden of proving his claim by a preponderance of the evidence. *Ex parte Torres*, 483 S.W.3d 35, 43 (Tex. Crim. App. 2016); *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002). In an 11.072 application, the trial judge is the sole finder of fact. *Torres*, 483 S.W.3d at 42; *State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013). Thus, we afford almost total deference to a trial court's factual findings, especially findings based on credibility and demeanor, and conclusions of law when they are supported by the record. *Torres*, 483 S.W.3d at 42; *Ex parte Garcia*, 353 S.W.3d 785, 788 (Tex. Crim. App. 2011) (observing that, in context of article 11.072 application, the courts of appeals and the Texas Court of Criminal Appeals "are truly appellate courts," and, thus, there is "less leeway" to disregard trial court's factual findings).

**B.      Applicable Law**

When a defendant asserts that he was rendered ineffective assistance of counsel as a result of a conflict of interest, we apply the test articulated in *Cuyler v. Sullivan*, 446 U.S. 335, 348–50 (1980).  Where a defendant raises no objection to his attorney's representation of multiple defendants, as in this case, the defendant must demonstrate that: (1) his counsel had an actual conflict of interest and (2) the conflict of interest adversely affected his counsel's performance at trial.  *Id*. at 348.

"An actual conflict of interest exists if counsel is required to make a choice between advancing his client's interest in a fair trial or advancing other interests (perhaps counsel's own) to the detriment of his client's interest."  *Acosta v. State*, 233 S.W.3d 349, 355 (Tex. Crim. App. 2007) (internal brackets, quotation marks, and citation omitted).  "An appellant must identify specific instances in the record that reflect a choice that counsel made between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one interest but harmful to the other."  *Perez v. State*, 352 S.W.3d 751, 755 (Tex. App.—San Antonio 2011, no pet.) (internal brackets, quotation marks, and citation omitted).  "[A] potential conflict may become an actual conflict, but [an appellate court need not] speculate about a strategy an attorney might have pursued . . . in the absence of some showing that the potential conflict became an actual conflict."  *Routier v. State*, 112 S.W.3d 554, 585 (Tex. Crim. App. 2003) (citing in *James v. State*, 763 S.W.2d 776, 781 (Tex. Crim. App. 1989)).  "'[U]ntil a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance.'"  *Acosta*, 233 S.W.3d at 355 (quoting *Cuyler*, 446 U.S. at 349–50).

"To show that an actual conflict of interest adversely affected counsel's performance, the appellant must show 'that trial counsel actually acted on behalf of those other interests during the

trial.'" *Perez*, 352 S.W.3d at 755 (quoting *Acosta*, 233 S.W.3d at 355). "The appellant must show that his trial counsel 'had to forego a strategy in the appellant's trial that he would have otherwise pursued if he had not represented [a conflicting interest].'" *Id.* (quoting *Routier*, 112 S.W.3d at 586).

## C.     Analysis

Assuming without deciding that Lopez satisfied the first *Cuyler* prong, he presented the habeas court with insufficient evidence regarding the second prong. Lopez emphasizes that the State's dismissal of the possession charge against Trevino, while he received deferred adjudication, satisfies the second — adversely affected — prong of *Cuyler*. According to Lopez, anytime the State moves to dismiss charges against a co-defendant and enters a plea bargain with the other, the second *Cuyler* prong is automatically satisfied as to the defendant who accepted the plea bargain.

Lopez's suggestion runs counter to the prohibition on "speculat[ing] about a strategy an attorney might have pursued . . . ." *Routier*, 112 S.W.3d at 585. There is no evidence in the record that Gonzalez-Lemon pressed the State for dismissal of the charge against Trevino in exchange for the plea bargain with Lopez. Gonzalez-Lemon averred that her file for Lopez's case was destroyed, and she provided no insight into her strategy in Lopez's and Trevino's cases. Moreover, the record provides no details about what evidence may have existed implicating Lopez and/or Trevino. In short, we do not know Gonzalez-Lemon's strategy that resulted in disparate results for her clients, and it is speculation on this record to assume that Gonzalez-Lemon pursued a plea bargain for one client to obtain dismissal of charges for another. *See Perez*, 352 S.W.3d at 755 (providing that the habeas applicant must show that the trial counsel actually acted on behalf of those other interests during the trial).

We overrule Lopez's first issue.

### III. ADEQUACY OF HABEAS COURT'S REVIEW

In Lopez's second issue, he complains that the habeas court erred in denying his application because it did so "without confronting the merits of [his] conflict of interest claim." Lopez's second issue fails because, "[w]e . . . defer to any implied findings and conclusions supported by the record." *Ex parte Harrington*, 310 S.W.3d 452, 457 (Tex. Crim. App. 2010). In rejecting Lopez's ineffective assistance of counsel claim under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), we conclude that the habeas court impliedly found that Lopez was not adversely affected by any potential conflict of interest.

We overrule Lopez's second issue.

### IV. CONCLUSION

We affirm the habeas court's denial of Lopez's application for a writ of habeas corpus.

Rebeca C. Martinez, Chief Justice

DO NOT PUBLISH