**Opinion filed April 30, 2025**



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00023-CR
_____

## EX PARTE VALENTINO FRANCO

**On Appeal from the 358th District Court**
**Ector County, Texas**
**Trial Court Cause No. D-43,117-A**

## M E M O R A N D U M   O P I N I O N

Appellant, Valentino Franco, appeals the trial court's order denying his application for a writ of habeas corpus filed pursuant to Article 11.072 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072 (West Supp. 2024). In three issues, Appellant contends that: (1) the trial court erred in determining that his writ claim was barred by laches; (2) he provided sufficient evidence of his actual innocence; and (3) the State violated his due process rights by using false testimony to obtain his conviction. We affirm.

*Factual and Procedural History*

Appellant was charged by indictment for committing the second-degree felony offense of robbery on or about August 9, 2013, and pleaded not guilty. *See* TEX. PENAL CODE. ANN. § 29.02 (West 2019).

At trial, the complainant, Atanacio Garcia, testified that Appellant had been selling leather jackets out of his vehicle in a Walmart parking lot. Garcia agreed to purchase four jackets for $100 apiece, but as Garcia handed Appellant the cash, Appellant took the money but, without delivering the jackets, began pushing Garcia away. Garcia testified that in response, he took hold of "something" on Appellant's shirt and then lost his footing. Garcia fell to the ground, scrapping his elbow and the left side of his head in the process, while Appellant drove away. During the struggle, Garcia had managed to grab Appellant's wallet, which contained Appellant's passport with his identifying information. Appellant's wallet and passport were admitted into evidence, along with photographs of Garcia's injuries.

Appellant challenged Garcia's version of events at trial; he testified that he was seated inside his vehicle when Garcia approached him "yelling," demanding a refund. Appellant stated that although he had been selling leather jackets out of his vehicle that day, he had not sold any to Garcia and told Garcia that perhaps he had confused him with another seller. According to Appellant, Garcia then tried to grab his passport, the two men had a "discussion," and Appellant drove away at its conclusion. Appellant denied ever accepting money from Garcia, pushing Garcia, or witnessing Garcia fall to the ground.

On August 20, 2015, the jury found Appellant guilty of robbery. The following day, the jury assessed Appellant's punishment at imprisonment for five years in the Institutional Division of the Texas Department of Criminal Justice but

recommended suspending his sentence and placing him on community supervision for a period of five years.  The trial court followed the jury's recommendation, and sentenced Appellant accordingly.  Appellant was released from community supervision in August 2020.

On March 3, 2023, eight years following his conviction, the Department of Homeland Security initiated removal proceedings against Appellant on the grounds that his conviction of robbery, a crime of moral turpitude, rendered him removable from the United States.[1]  *See* 8 U.S.C. § 1182(a)(6)(A)(i) (West Supp. 2024).  Three months later, Appellant sought habeas corpus relief from the 2015 robbery conviction and order of community supervision.  Appellant filed his application for writ of habeas corpus in the trial court, asserting an actual innocence claim based on Garcia's recant of his trial testimony.  *See* CRIM. PROC. art. 11.072.  Appellant attached several exhibits to his application, including: (1) Garcia's trial testimony transcript; (2) Appellant's trial testimony transcript; (3) an affidavit signed by Garcia; and (4) the transcript from Appellant's immigration proceeding.  The State did not file a response to Appellant's application for writ of habeas corpus.  *See id.* art. 11.072 § 5(b).

The attached affidavit read in its entirety:

My name is Atanacio Garcia.  I am over the age of 18 and am competent to make this affidavit.  I have read the facts below and they are within my personal knowledge and are true and correct.

I am writing this statement to correct a mistake I made in my testimony in the robbery case involving [Appellant].  I now realize that my previous testimony was misleading and incorrect.  I want to make clear that I was not involved in a robbery with [Appellant].

---

[1]Appellant is a citizen of Italy and a permanent resident of the United States.

In truth, what happened that day was simply a dispute over a jacket. I was angry at the time and acted impulsively, but I never intended for [Appellant] to be convicted of a crime he didn't commit. It is important for me to set the record straight now and rectify the wrongful conviction of [Appellant]. I deeply regret my actions and the harm they have caused. I hope this statement can bring justice to [Appellant] and clear his name. Thank you for your time and attention.

During Appellant's removal proceedings, Garcia testified at a merits hearing, and denied that Appellant had taken his money by force or assaulted him on the day in question. When asked why he was testifying at the hearing, Garcia responded:

Because [Appellant's wife] has been coming to -- came to my house and begged to -- for me to come and speak in [sic] behalf of [Appellant] over here. And he's -- she's been calling my wife. So I just want to get everything done and finished.

On cross-examination, Garcia clarified that he had not been paid to recant his testimony, nor had he been threatened or coerced into recanting. But Garcia later reiterated that Appellant's family had contacted him "a handful" of times and expressed that he was "afraid" of "retaliation." Garcia explained that he was changing his previous sworn testimony because he "felt sorry for [Appellant's] kids," and reaffirmed his recantation when questioned by the immigration judge.

On December 11, 2023, the trial court conducted a hearing on Appellant's application; Garcia was the only witness. Garcia agreed that he had signed an affidavit prepared by Appellant's wife or lawyer declaring that his testimony at trial had been "misleading." He had agreed to sign the affidavit after Appellant's wife "showed up one evening to [his] house." Garcia testified that she had "approached [his] house twice and called [him] maybe a handful" of times, and that he had concerns about retaliation. Garcia testified that he had "no idea" how she knew

4

where to reach him. When asked why the trial court should believe his habeas testimony as opposed to what he testified to at Appellant's trial, Garcia merely stated, "I was mad. Frustrated." When questioned by the trial court, Garcia confirmed that throughout the process of reporting the offense to police at the police station, speaking to investigators and the prosecutor, and testifying at trial under oath, he never told anyone that "this really didn't happen."

The trial court denied Appellant's requested habeas relief. As part of its written findings of fact and conclusions of law, the trial court concluded that the doctrine of laches barred Appellant's habeas application. The trial court continued that, "even considering the substance of [Appellant]'s ground for relief," Appellant failed to put forth newly discovered evidence of actual innocence.[2] With regard to Appellant's actual innocence claim, the trial court found that "the circumstances under which Garcia's affidavit was procured casts doubt upon the credibility of the statements contained therein." The court additionally found that "Garcia's affidavit is not a 'recanting' of his trial testimony"; "the claims [Appellant] brings in the present habeas application were essentially [Appellant's] defensive theory at trial"; and "Garcia's affidavit does not constitute new evidence."

*Standard of Review*

"Article 11.072 is 'the exclusive means by which the district courts may exercise their original habeas jurisdiction under Article V, Section 8, of the Texas Constitution' in cases involving an individual who is serving a term of community supervision." *Ex parte Torres*, 483 S.W.3d 35, 42 (Tex. Crim. App. 2016) (quoting *Ex parte Villanueva*, 252 S.W.3d 391, 397 (Tex. Crim. App. 2008)). In a post-

---

[2]Appellant did not seek habeas relief claiming a due process violation so the argument, though made on appeal, was not addressed in the trial court's findings and conclusions.

conviction writ application filed pursuant to Article 11.072, "the trial court is the sole finder of fact, and the reviewing court acts only as an appellate court." *Ex parte Sanchez*, 625 S.W.3d 139, 144 (Tex. Crim. App. 2021). As such, when reviewing a ruling on an application for writ of habeas corpus, we view the facts in the light most favorable to the trial court's ruling and will ordinarily uphold it absent an abuse of discretion. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006); *Ex parte Afolabi*, No. 11-22-00342-CR, 2024 WL 2061266, at *6 (Tex. App.—Eastland May 9, 2024, no pet.) (mem. op., not designated for publication). In this setting, we afford almost total deference to a trial court's factual findings when they are supported by the record, especially when those findings are based upon the trial court's assessments of credibility and demeanor. *Torres*, 483 S.W.3d at 42; *see Ex parte Garcia*, 353 S.W.3d 785, 788 (Tex. Crim. App. 2011) ("There is less leeway in an article 11.072 context to disregard the findings of a trial court. Because the court of appeals and this Court are truly appellate courts in the article 11.072 context, it makes sense as a matter of logic that the *Guzman* standard would control.") (footnote omitted).

"To prevail on a post-conviction writ of habeas corpus, the applicant bears the burden of proving, by a preponderance of the evidence, the facts that would entitle him to relief." *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002); *see Ex parte Torres*, 483 S.W.3d at 43. In habeas corpus proceedings, "[v]irtually every fact finding involves a credibility determination" and "the fact finder is the exclusive judge of the credibility of witnesses." *Ex parte Mowbray*, 943 S.W.2d 461, 465 (Tex. Crim. App. 1996); *see Torres*, 483 S.W.3d at 42. In its fact-finding role, the trial court may accept or reject all, part, or none of any witness's testimony. *See Guerrero*, 400 S.W.3d at 583. We will uphold the trial court's ruling and

6

judgment if it is correct on any theory of law that is applicable to the case. *Ex parte Taylor*, 36 S.W.3d 883, 886 (Tex. Crim. App. 2001); *see Diamond v. State*, 613 S.W.3d 536, 544–45 (Tex. Crim. App. 2020); *Ex parte Beck*, 541 S.W.3d 846, 852 (Tex. Crim. App. 2017).

*Clear and Convincing Evidence of Actual Innocence Needed*

In his second issue, which we address first because it is dispositive,[3] Appellant argues that he proved by clear and convincing evidence that he is actually innocent and no jury would have convicted him of robbery following Garcia's recantation.

Establishing an actual innocence claim "is a Herculean task." *Ex parte Brown*, 205 S.W.3d 538, 545 (Tex. Crim. App. 2006); *Ex parte Meredith*, No. 11-17-00016-CR, 2017 WL 2986847, at *5 (Tex. App.—Eastland July 13, 2017, no pet.) (mem. op., not designated for publication). There are two types of actual innocence claims. *Ex parte Navarijo*, 433 S.W.3d 558, 567 n.2 (Tex. Crim. App. 2014) (citing *Ex parte Franklin*, 72 S.W.3d 671, 675 (Tex. Crim. App. 2002)). The first is a "freestanding innocence claim, also known as a *Herrera*–type claim," which is based solely on newly discovered evidence. *Id.*; *see Herrera v. Collins*, 506 U.S. 390, 417 (1993). The second is a *Schlup*-type claim, which is a "procedural claim in which applicant's claim of innocence does not provide a basis for relief, but is tied to a showing of constitutional error at trial." *Ex parte Navarijo*, 433 S.W.3d at 567 n.2 (quoting *Ex parte Franklin*, 72 S.W.3d at 675); *see Schlup v. Delo*, 513 U.S. 298, 314 (1995).

---

[3]"The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal." TEX. R. APP. P. 47.1; *Ex parte Barnum*, No. 11-22-00029-CR, 2023 WL 7028437, at *6 (Tex. App.—Eastland Oct. 26, 2023, pet. ref'd) (mem. op., not designated for publication). Other issues being dispositive, we do not address Appellant's laches issue or the trial court's ruling regarding same.

When, as here, an applicant asserts a *Herrera*-type actual innocence claim, the habeas applicant must demonstrate by clear and convincing evidence that no reasonable juror would have found him guilty in light of the new evidence. *Ex parte Navarijo*, 433 S.W.3d at 560; *Ex parte Franklin*, 72 S.W.3d at 678. The "new" evidence, when balanced against the "old" inculpatory evidence, must unquestionably establish the applicant's innocence. *Ex parte Brown*, 205 S.W.3d at 546. The term "newly discovered evidence" refers to evidence that was not known to the applicant at the time of trial and could not be known to him even with the exercise of due diligence. *Id.* at 545; *see Ex parte Holloway*, 413 S.W.3d 95, 96–97 (Tex. Crim. App. 2013). While a complainant's recantation may constitute "new" evidence, it remains within the trial court's province as the finder of fact to assess the credibility of such recanting. *Ex parte Vasquez*, 499 S.W.3d 602, 609–10 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd); *see Ex parte Gonzalez*, 323 S.W.3d 557, 559 n.3 (Tex. App.—Waco 2010, pet. ref'd) ("The recantation of a witness raises a *Herrera* claim.").

Assuming without deciding that Garcia's post-trial statements constituted *new* evidence,[4] the trial court had evidence before it to support its finding that Garcia's testimony at trial was more credible than his recantation. Although Garcia testified

---

[4]The trial court held that Appellant failed to demonstrate any newly discovered evidence in support of his actual innocence claim. In holding that complainant's affidavit was not new evidence, the trial court found, in relevant part, that "Garcia's testimony both at trial and in his affidavit executed nearly 10 years later are substantially similar" and "[Appellant's] defensive theory at trial was one of false and misleading testimony by Garcia." *See State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013); *see also Ex parte Valdez*, No. 11-19-00398-CR, 2020 WL 6498410, at *2 (Tex. App.—Eastland Nov. 5, 2020, no pet.) (mem. op., not designated for publication) (concluding the appellant's evidence did "not constitute newly discovered or newly available evidence that will support a claim of actual innocence" where the appellant was convicted of possession of an unlawful prescription and in the appellant's application for writ of habeas corpus, he attached an affidavit from an individual declaring that the prescription found belonged to her because this information was known to the appellant at the time of his plea).

that he signed an affidavit, which stated that his trial testimony was "misleading and incorrect," Garcia neither testified at the habeas hearing with any particularity nor did his affidavit state with any particularity "how his trial testimony was 'misleading' or 'incorrect.'" When Garcia was prompted as to why the trial court should believe his habeas testimony as opposed to what he testified to at trial, Garcia summarily stated, "I was mad. Frustrated." Garcia stated that it was Appellant's wife or Appellant's lawyer who drafted the affidavit, and that he signed the affidavit only after Appellant's wife had obtained Garcia's personal information without his knowledge and "showed up to [his] front door." Additionally relevant were Garcia's expressed concerns about retaliation from Appellant's family at both the habeas hearing and immigration hearing. Such responses, coupled with Garcia's non-specific affidavit support the trial court's conclusion that "the circumstances under which Garcia's affidavit was procured cast[] doubt upon the credibility of the statements contained therein." *See Ex parte Vasquez*, 499 S.W.3d at 609 ("The fact finder is entitled to reconcile conflicts in the testimony and to disbelieve a recantation.").

The resolution of Appellant's application for writ of habeas corpus here depends heavily upon the trial court's assessment of credibility, and we defer, as we must, to the trial court's credibility determinations because they are supported by the record. *See Ex parte Thompson*, 153 S.W.3d 416, 417–18 (Tex. Crim. App. 2005); *Ex parte Vasquez*, 499 S.W.3d at 609; *see also Ex parte Greer*, No. 10-19-00126-CR, 2019 WL 4200419, at *2 (Tex. App.—Waco Sept. 4, 2019, pet. ref'd) (mem. op., not designated for publication) (deferring to the trial court's credibility findings where the trial court found that a complainant's recantation was not credible); *Ex parte Harris*, No. 05-18-00008-CR, 2018 WL 2749686, at *3 (Tex. App.—Dallas

May 31, 2018, no pet.) (mem. op., not designated for publication) (concluding the same where a complainant recanted her statement accusing the appellant of stealing from her because "[t]he trial court, having had the opportunity to assess the credibility and demeanor of both the complainant's and appellant's testimonies, was in a better position than this court to evaluate the credibility of appellant's alleged new evidence"); *Ex parte Irwin*, No. 2-09-282-CR, 2009 WL 3720176, at *2 (Tex. App.—Fort Worth Nov. 5, 2009, pet. denied) (mem. op., not designated for publication) (concluding the same where the trial court considered a complainant's prior testimony and photographic evidence of injuries sustained).

In light of the circumstances under which Garcia executed his non-specific affidavit, written by either Appellant's wife or lawyer ten years after the offense, the trial court did not abuse its discretion in finding that Garcia's affidavit and accompanying testimony failed to unquestionably establish Appellant's innocence. *See Ex parte Navarijo*, 433 S.W.3d at 569 ("[T]he complainant's global denial of sexual abuse after a more than ten-year delay does not rise to the level of clear and convincing evidence to show that no reasonable juror would have convicted applicant in light of that evidence."); *Ex parte Brown*, 205 S.W.3d at 547–48 (concluding the same where a complainant's testimony at the habeas hearing, made seven years after the event, that she "made up her allegation merely because she was mad" at the appellant was determined to be "vague, uncertain, and nonspecific"). The evidence of innocence, as presented, falls short of being clear and convincing. Accordingly, we cannot conclude that the trial court's denial of Appellant's application for writ of habeas corpus was an abuse of discretion. *See Ex parte Sanchez*, 625 S.W.3d at 144. We overrule Appellant's second issue.

Having concluded that Appellant failed to show he is actually innocent of the convicted offense by clear and convincing evidence, we need not address Appellant's first issue. *See* TEX. R. APP. P. 47.1.

*Alleged Violation of Due Process Issue Not Preserved*

As to Appellant's third issue, he claims a due process violation for the State's alleged use of false testimony. However, in his application for writ of habeas corpus, Appellant's sole ground for relief was his actual innocence claim; he made no complaint that the State had violated his Fourteenth Amendment right to due process. *See Ex parte Cook*, 691 S.W.3d 532, 590 (Tex. Crim. App. 2024) (observing the difference between a due process claim and actual innocence claim in an application for a writ of habeas corpus).

When an issue is not specifically included in an application for writ of habeas corpus, the issue may not be raised for the first time on appeal. *See* TEX. R. APP. P. 33.1(a)(1); *Ex parte Campozano*, 610 S.W.3d 572, 581 (Tex. App.—Dallas 2020, pet. ref'd) ("Our review of the trial court's order denying habeas relief is limited to issues properly raised and addressed before the trial court."); *Ex parte Perez*, 536 S.W.3d 877, 880 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (concluding the same); *see also Ex parte Garza*, No. 04-20-00420-CR, 2021 WL 6127929, at *2 n.4 (Tex. App.—San Antonio Dec. 29, 2021, no pet.) (mem. op., not designated for publication) (same); *Ex parte Najera*, No. 08-17-00216-CR, 2019 WL 2120328, at *7 (Tex. App.—El Paso May 15, 2019, no pet.) (not designated for publication) (same); *Ex parte Tutton*, No. 10-14-00360-CR, 2015 WL 4384496, at *3 (Tex. App.—Waco July 9, 2015, pet. ref'd) (mem. op., not designated for publication) (same); *Ex parte Motta*, No. 13-13-00667-CR, 2014 WL 6602280, at

*3 (Tex. App.—Corpus Christi–Edinburg Nov. 20, 2014, no pet.) (mem. op., not designated for publication) (same).

Because Appellant did not raise a due process claim in his writ application or during the writ hearing, we may not address it now for the first time on appeal. *See* TEX. R. APP. P. 33.1(a)(1); *see also Ex parte Villanueva*, No. 04-21-00345-CR, 2022 WL 4492101, at *2 (Tex. App.—San Antonio Sept. 28, 2022, no pet.) (mem. op., not designated for publication) (concluding the appellant "failed to preserve her due process spoliation argument because she did not raise it in her application or at the writ hearing"). We overrule Appellant's third issue.

*This Court's Ruling*

We affirm the order of the trial court.


W. BRUCE WILLIAMS

April 30, 2025                                  JUSTICE

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Williams, J., and Wright, S.C.J.[5]

Trotter, J., not participating.

---

[5]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.