

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-25-00369-CR

_____

EX PARTE ROBERT BRIMMER

On Appeal from Criminal District Court No. 3
Tarrant County, Texas
Trial Court No. C-3-W012665-1779680-AP

Before Sudderth, C.J.; Kerr and Womack, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

Appellant Robert Brimmer pleaded guilty to aggravated assault with a deadly weapon and was placed on forty-eight months of deferred adjudication community supervision. *See* Tex. Penal Code Ann. § 22.02(a)(2). Brimmer later filed a request for habeas corpus relief under Article 11.072 of the Texas Code of Criminal Procedure complaining that his plea was invalid, which the trial court denied. *See* Tex. Code Crim. Proc. Ann. art. 11.072. In one issue on appeal, Brimmer argues that the trial court abused its discretion by denying his request for habeas corpus relief. Specifically, he contends that he proved by a preponderance of the evidence that he was not competent to enter his plea and that his plea was not made voluntarily or knowingly. We will affirm.

## II. BACKGROUND

### A. Brimmer's Indictment, the Trial Court's Order for a Competency Examination, and Dr. Kristi Compton's February 9, 2024 Examination

In December 2023, Brimmer was indicted for aggravated assault with a deadly weapon against a public servant. *See* Tex. Penal Code Ann. § 22.02(b)(2)(B). On January 24, 2024, Brimmer's counsel filed a notice of intention to raise evidence of an insanity defense. A week later, the trial court signed an order for a competency examination to be performed on Brimmer by Dr. Kristi Compton. The competency

2

evaluation was originally scheduled for February 19, 2024; however, Dr. Compton evaluated Brimmer on February 9, 2024, and found him competent.

## B. Brimmer's February 14, 2024 Guilty Plea

On February 14, 2024, Brimmer pleaded guilty to a lesser-included offense— aggravated assault with a deadly weapon—and was placed on forty-eight months of deferred adjudication community supervision. *See id.* § 22.02(a)(2). In the plea paperwork, the trial court gave Brimmer numerous admonishments regarding the consequence of his plea. In the written waivers that were part of the plea paperwork, Brimmer represented that he was "aware of the consequence of [his] plea," that he was "mentally competent," and that his plea was "knowingly, freely, and voluntarily entered." His attorney also stated in the plea paperwork that he was satisfied that Brimmer was "legally competent and ha[d] intelligently, knowingly, and voluntarily waived his rights and w[ould] enter a guilty plea understanding the consequences thereof."

## C. Brimmer's Subsequent Arrest and Habeas Application

In July 2025, the State filed a petition to proceed to adjudication, arguing that Brimmer had violated the terms and conditions of his community supervision. Brimmer was later arrested pursuant to a warrant. Thereafter, Brimmer filed an application for writ of habeas corpus challenging the validity of his guilty plea.

3

**D. The Hearing on Brimmer's Habeas Application**

In September 2025, the trial court conducted a hearing on Brimmer's habeas application. Four witnesses testified at the hearing: Dr. Compton, Brimmer's son, Brimmer's former attorney, and the court coordinator of the trial court. We will summarize the pertinent testimony.

**1. Dr. Compton's Testimony**

Dr. Compton testified that she was a clinical and forensic psychologist who had been practicing for twenty-five years and who had completed over 3,000 competency evaluations. She further stated that while Brimmer's original competency appointment was scheduled for February 19, 2024, it was "bumped up" to February 9, 2024.

Dr. Compton said that before she interviewed Brimmer, she had reviewed his jail health records—which included "nursing records, psychiatric evaluations, and MHMR follow-up"—and the offense report. According to the records, Brimmer had been diagnosed with a "mild major depressive disorder" and was "restarted on medication he had taken in the community," including lithium. Dr. Compton stated that Brimmer—who was a medical doctor—had no intellectual disabilities.

Dr. Compton testified that she had interviewed Brimmer and had conducted a mental status examination. According to Dr. Compton, she was concerned about "potential paranoid ideation related to his wife and [his wife's] son." However, Dr.

4

Compton maintained that Brimmer understood "where he was, what had happened, the charge, [and] who the different players [were] in the courtroom."

Dr. Compton stated that she had never prepared a report pertaining to her evaluation of Brimmer because the trial court had informed her on February 14, 2024, that the evaluation had been canceled. When Dr. Compton told the trial court that she had already seen Brimmer, the court asked her if he was competent, and Dr. Compton responded that he was. Dr. Compton testified that "anyone who has any type of mental illness, their mental state is going to wax and wane" and they could be competent one month and not competent in another month. However, she maintained that a competency evaluation "at the time" is going to be more accurate than a "retrospective evaluation."

## 2. Brimmer's Son's Testimony

Brimmer's son testified that he bailed his father out of jail in May 2023. At that time, Brimmer's son was concerned about Brimmer's ability to care for himself, noting that Brimmer "had . . . kind of paranoid delusions." When asked whether he had an opinion as to whether Brimmer understood what was going on during the guilty-plea hearing several months later, Brimmer's son stated, "It's really hard to say. [Brimmer] didn't seem like he had a great grasp of much of anything really."

### 3. Brimmer's Former Attorney's Testimony

Brimmer's former attorney—Abe Factor—testified that he had represented Brimmer when Brimmer had pleaded guilty.[1] Factor stated that he had had no concerns relating to Brimmer's mental health or competency during his representation. Factor said that Brimmer had expressed "some views about the case that were . . . unreasonable,"[2] but Factor "never got the impression that [Brimmer] was delusional or that he was not able to understand [Factor's] questions." Factor stated that he had spoken to Brimmer about pleading guilty to a lesser charge and being placed on probation, and Factor indicated that Brimmer had "understood that." Factor also said that Brimmer had stated that he would "rather be out and fight the case." However, Factor made clear that Brimmer had "understood that he was pleading to a lesser charge" and that "taking probation would allow him to be released to the community under . . . rules."

Factor testified that if he had had any concerns regarding Brimmer's competency at the time of the guilty plea, he would have raised those concerns with the trial court. Factor stated that he went over every word of the plea agreement with Brimmer and that he had explained the agreement "in great detail." Factor testified

[1]Factor did not represent Brimmer at the writ hearing, describing him as a "former client."

[2]As to Brimmer's alleged "unreasonable" views of the case, Factor stated that Brimmer believed that he could not be prosecuted for an offense against a police officer who had come on his property.

6

that he was confident that Brimmer had been competent when he had pleaded guilty, stating that Brimmer had "understood it."

### 4. The Court Coordinator's Testimony

The court coordinator of the trial court testified that typically a report is filed after a mental health examination is conducted. The court coordinator stated that she did not receive a report from Dr. Compton pertaining to Brimmer. She said that she had received communication from Dr. Compton's office on February 16, 2024, indicating that Brimmer had been examined by Dr. Compton and had been found to be competent.

## E. The Trial Court's Denial of Brimmer's Habeas Application and the Trial Court's Findings of Fact and Conclusions of Law

Following the hearing, the trial court denied Brimmer's habeas application and adopted the State's proposed findings of fact and conclusions of law. As pertinent here, the trial court made the following findings of fact:[3]

> 1. On February 14, 2024, [Brimmer], pursuant to a plea agreement, pleaded guilty to the second-degree felony of aggravated assault with a deadly weapon.
>
> . . . .
>
> 10. On January 24, 2024, [Brimmer's] former defense attorney, Mr. Abe Factor, filed a notice of intention to raise evidence of an insanity defense.

---

[3]The trial court's findings include citations to the record. For ease of reading, we do not include these citations in our quotations of the findings.

11.     On January 31, 2024, this Court appointed clinical and forensic psychologist, Dr. Kristi Compton, to conduct a competency evaluation of [Brimmer] on February 19, 2024, at 11:30 a.m.

12.     On the order for competency evaluation, Mr. Factor observed that [Brimmer] had "distorted thinking, does not understand process."

13.     Mr. Factor requested a competency evaluation because of [Brimmer's] unreasonable views about the law as applied to his case, namely, that since he was on his own property, he could not be prosecuted.

14.     Prior to conducting the interview portion of her evaluation, Dr. Compton reviewed [Brimmer's] jail health records and the offense report.

15.     According to his jail health records, [Brimmer] was diagnosed with mild major depressive disorder, was prescribed Lithium, and had private outpatient psychiatric care for many years.

16.     While he was in jail, [Brimmer] was prescribed 300 mg of Lithium and 100 mg of Trazodone.

17.     [Brimmer] does not have any intellectual disabilities.

18.     Prior to her interview with [Brimmer], Dr. Compton spoke with an officer at the jail who said [Brimmer] had been cooperative and had not been a problem.

19.     There were no indications in [Brimmer's] jail records of any mania, hypomania, or psychosis, and [he] had clear, organized, logical, goal-directed thought processes and was adequately groomed.

20.     On February 9, 2024, Dr. Compton conducted her interview with [Brimmer].

21.     Dr. Compton asked about [Brimmer's] mental health history, substance abuse, and personal history; assessed his symptoms at the time of the evaluation; conducted a mental status examination; and assessed [Brimmer's] understanding of the court system, his case, the plea process, and the potential penalties.

22. [Brimmer] understood the court processes.

23. In addition to her competency questions, Dr. Compton administered the St. Louis University Mental Status Examination, which is used to detect neurocognitive impairment or dementia.

24. [Brimmer] scored solidly within the average range.

25. Dr. Compton had concerns about potential paranoid ideation related to [Brimmer's] wife and her son, but it was not related to the underlying offense.

26. At the end of her evaluation of [Brimmer] on February 9, 2024, Dr. Compton concluded that [he] was competent.

27. Dr. Compton's conclusion was contingent upon [Brimmer] taking his prescribed medication while in jail.

28. As of the date of [Brimmer's] plea, Dr. Compton had not completed her written competency report.

29. On February 14, 2024, Mr. Factor negotiated with the State to lower the first-degree charge to a second-degree charge and place [Brimmer] on probation.

30. Factor relayed the plea bargain offer to [Brimmer] while he was still at the jail, and [Brimmer] said he understood the offer.

31. [Brimmer] stated he wanted to be released from custody and fight his case.

32. Factor explained that because of [Brimmer's] multiple bond violations, he would not be released from custody while he waited for trial on the first-degree charge.

33. When [Brimmer] was brought to court, Factor reviewed the plea bargain offer with [him] and explained, in great detail, the rights [Brimmer] would be waiving by pleading guilty.

34.     Factor has a general process of how he reviews the plea process with his clients.

35.     In this case, Factor went over every word of the plea process with [Brimmer].

36.     Factor reviewed every part of the plea bargain with [Brimmer] . . .

37.     When Factor was explaining the plea bargain with [Brimmer], he never denied his conduct but remained consistent that he wanted to fight the charge.

38.     [Brimmer] was also consistent in his perspective of the facts and his theory of his case, though he was incorrect regarding the legal ramifications of his actions.

39.     Factor did not wait for the formal competency evaluation report to come in because [Brimmer] was competent that day.

40.     Factor has experience with people who are competent at one moment but not competent at another.

41.     Factor is confident that [Brimmer] was competent the day he pled, as [Brimmer] understood the benefit of pleading to a lesser charge and receiving community supervision.

. . . .

43.     The trial court signed the written plea admonishments and made a finding that [Brimmer] was mentally competent without knowing that the evaluation had been conducted.

44.     On February 14, 2024, [Brimmer] acknowledged and signed the Written Plea Admonishments, which included the following

      a.     That he was aware of the consequences of his plea.

      b.     That he was mentally competent and entered his plea knowingly, freely, and voluntarily.

c.    That he was giving up and waiving all pretrial motions that may have been filed in his case.

45.    On February 14, 2024, [Brimmer's] defense counsel, Abe Factor, acknowledged by his signature that he

"fully reviewed and explained the above and foregoing court admonishments, rights, and waivers, as well as the following judicial confession to [Brimmer].  I am satisfied that [he] is legally competent and has intelligently, knowingly, and voluntarily waived his rights and will enter a guilty plea understanding the consequences thereof."

46.    On February 14, 2024, [Brimmer] signed a judicial confession in which he pled guilty to the indictment and affirmed that he understood the applicable punishment range and the State's plea offer.

47.    On February 14, 2024, the trial court found [Brimmer] mentally competent and that his plea was entered intelligently, freely, and voluntarily.

48.    On February 14, 2024, the trial court informed Dr. Compton's office that the competency evaluation was cancelled.

49.    Dr. Compton's office informed the trial court that an evaluation had already been conducted on February 9, 2024, and that [Brimmer] was found competent.

50.    The trial court has a general process for accepting pleas:  calling the defendant up, explaining the charges and the plea bargain, asking every defense attorney if they believe their client is competent and the plea is being voluntarily made, and going through the written plea admonishments.

51.    If this Court has any concerns regarding a defendant's competency while conducting a plea, the proceedings are stopped and the defendant speaks with his or her attorney; if the issues are resolved, the plea moves forward.

52. If the trial court had had concerns about [Brimmer's] mental competency, it would not have accepted [his] guilty plea or rescinded its Order For Competency Examination.

53. There is no credible evidence that, at the time of his plea, [Brimmer] was mentally incompetent.

54. [Brimmer] was competent at the time of his plea.

As pertinent here, the trial court made the following conclusions of law:

16. [Brimmer] was found competent five days prior to his plea.

17. [Brimmer] has failed to prove that he did not have the sufficient present ability to consult with his trial counsel with a reasonable degree of rational understanding at the time of his plea.

18. [Brimmer] has failed to prove that he did not have a rational or factual understanding of the proceedings against him at the time of his plea.

19. [Brimmer] was competent at the time of his plea.

20. [Brimmer] has failed to prove that his plea was involuntary due to incompetency.

. . . .

22. [Brimmer] was properly admonished.

. . . .

25. [Brimmer's] written acknowledgement that his plea was freely and voluntarily made establishes a prima facie case that his plea was knowing and voluntary.

26. [Brimmer] has failed to overcome the presumption that his plea was regular.

27. [Brimmer] has failed to prove that his plea was not freely, voluntarily, or knowingly made.

28.     [Brimmer's] sole ground for relief is DENIED.

This appeal followed the trial court's denial of habeas corpus relief.

### III. DISCUSSION

In his sole issue,[4] Brimmer contends that the trial court abused its discretion by denying his request for habeas corpus relief because he proved by a preponderance of the evidence that he was not competent to make his plea and that it was not made voluntarily or knowingly.

### A. Standard of Review and Burden of Proof

Article 11.072 of the Texas Code of Criminal Procedure allows a defendant on community supervision to challenge the legal validity of the order imposing community supervision by filing an application for a writ of habeas corpus. *See* Tex. Code Crim. Proc. Ann. art. 11.072. An applicant seeking habeas corpus relief under Article 11.072 bears the burden of proving his claim by a preponderance of the evidence. *Ex parte Salim*, 595 S.W.3d 844, 853 (Tex. App.—Fort Worth 2020, no pet.) (mem. op.) (citing *State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013)).

We review a trial court's denial of habeas corpus relief for an abuse of discretion. *Ex parte Moreno*, 382 S.W.3d 523, 526 (Tex. App.—Fort Worth 2012, pet. ref'd). The trial court is the sole factfinder in cases involving applications for writs of habeas corpus filed pursuant to Article 11.072, and "we afford almost total deference

---

[4]While the State's brief references two issues, Brimmer raised only one.

to a trial court's factual findings when they are supported by the record, especially when those findings are based upon credibility and demeanor." *Ex parte Torres*, 483 S.W.3d 35, 42 (Tex. Crim. App. 2016); *see Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) (setting out "as comprehensive a statement of the applicable standards" of review as the Court of Criminal Appeals could provide). However, when the resolution of any ultimate question turns on an application of legal standards, we review the trial court's ruling de novo. *Doyle v. State*, 317 S.W.3d 471, 475–76 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd); *see Salim*, 595 S.W.3d at 853 (stating that we review "de novo pure questions of law and application-of-law-to-fact questions that do not turn on credibility and demeanor").

## B. Applicable Law

A person is incompetent to stand trial if he does not have (1) a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding or (2) a rational, as well as factual, understanding of the proceedings against him. Tex. Code Crim. Proc. Ann. art. 46B.003(a). A defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence. *Id.* art. 46B.003(b).

A guilty plea must be made freely and voluntarily. *Id.* art. 26.13(b); *see Ex parte Christian*, 714 S.W.3d 1, 5 (Tex. Crim. App. 2024) ("A guilty plea involves the waiver of several constitutional rights and therefore must be entered knowingly, intelligently, and voluntarily."). "A guilty plea is valid only if it is 'a voluntary and intelligent choice

14

among the alternative courses of action open to the defendant.'" *Ex parte Broussard*, 517 S.W.3d 814, 816 (Tex. Crim. App. 2017) (quoting *Guerrero*, 400 S.W.3d at 588). We must examine the entire record to determine the voluntariness of a defendant's plea. *Williams v. State*, 522 S.W.2d 483, 485 (Tex. Crim. App. 1975); *Dunn v. State*, No. 02-18-00082-CR, 2019 WL 1388546, at *2 (Tex. App.—Fort Worth Mar. 28, 2019, no pet.) (mem. op., not designated for publication); *see Christian*, 714 S.W.3d at 5.

When a defendant has been duly admonished, there is a prima facie showing that his guilty plea was entered knowingly and voluntarily. *Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998); *Perez v. State*, No. 02-24-00160-CR, 2025 WL 494645, at *2 (Tex. App.—Fort Worth Feb. 13, 2025, no pet.) (mem. op., not designated for publication). A defendant who attested that he understood the nature of his plea and that his plea was voluntary bears the "heavy burden" on appeal to show that his plea was involuntary. *Johnson v. State*, No. 02-23-00090-CR, 2024 WL 1318238, at *2 (Tex. App.—Fort Worth Mar. 28, 2024, pet. ref'd) (mem. op., not designated for publication); *Thomas v. State*, 615 S.W.3d 552, 569 (Tex. App.—Houston [1st Dist.] 2020, no pet.). To meet his burden, the defendant must affirmatively show that he was not aware of the consequences of his plea and that he

was misled or harmed by the trial court's erroneous admonishment.[5] *Johnson*, 2024 WL 1318238, at *2; *Thomas*, 615 S.W.3d at 569.

## C. Application of the Law to the Facts

In his brief, Brimmer argues that the trial court abused its discretion by denying his application because he "proved by a preponderance of the evidence that he was not competent to enter a plea of guilty on February 14, 2024." We disagree.

In support of his argument that he was incompetent on February 14, 2024, Brimmer points to evidence surrounding his mental state on numerous dates that were not in February 2024—such as his previous diagnosis for "depression in the 1990s," his "deluded thinking and paranoia surrounding his [May 2023] arrest," and subsequent competency proceedings involving him in 2025. Brimmer ignores the relevant time frame. *See Laflash v. State*, 614 S.W.3d 427, 432 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (order) ("The relevant time frame for determining a person's competence is at the time of the proceedings."); *Jackson v. State*, 391 S.W.3d 139, 143 (Tex. App.—Texarkana 2012, no pet.) (same).

Here, in the plea paperwork that was signed on February 14, 2024, Brimmer represented that he was "aware of the consequence of [his] plea" and that he was "mentally competent." Factor also stated in the plea paperwork that Brimmer was "legally competent" and had "voluntarily waived his rights and w[ould] enter a guilty

---

[5]In his brief, Brimmer candidly states that he "does not suggest that he was not properly admonished by the trial court regarding the consequences of his guilty plea."

16

plea understanding the consequences thereof." Moreover, Factor testified that he had had no concerns relating to Brimmer's mental health or competency during his representation of Brimmer. Factor maintained that he was confident that Brimmer had been competent when he had pleaded guilty, stating that Brimmer had "understood it." And notably, Dr. Compton had determined that Brimmer was competent on February 9, 2024—just five days before he pleaded guilty.[6] *See Laflash*, 614 S.W.3d at 432; *Jackson*, 391 S.W.3d at 143.

Brimmer also argues that the trial court abused its discretion by denying his application because he "proved by a preponderance of the evidence that his plea was not made knowingly and voluntarily." We again disagree.

Brimmer's plea paperwork reflects that he was admonished by the trial court, which is prima facie evidence that his plea was entered knowingly and voluntarily. *See Martinez*, 981 S.W.2d at 197; *Perez*, 2025 WL 494645, at *2. In addition, Brimmer stated in the plea paperwork that his plea was "knowingly, freely, and voluntarily entered." Factor also indicated in the plea paperwork that he was satisfied that Brimmer had "intelligently, knowingly, and voluntarily waived his rights." Moreover,

---

[6]In his brief, Brimmer states that "[t]he only evidence to suggest that [he] was competent at the time of his plea is testimony during the evidentiary hearing from Factor and Compton." Brimmer argues that we should discount this evidence because "the credibility of both of these witnesses was called into question during the evidentiary hearing." We disagree. As the reviewing court, we are to give almost total deference to the trial court's findings, especially when those findings are based on credibility and demeanor. *See Torres*, 483 S.W.3d at 42; *see also McDaniel v. State*, 98 S.W.3d 704, 713 (Tex. Crim. App. 2003) ("We cannot ignore the trial court's first-hand factual assessment of [the] appellant's mental competency.").

Factor testified that Brimmer had "understood that he was pleading to a lesser charge" and that "taking probation would allow him to be released to the community under . . . rules."[7]

After viewing the whole record and after giving deference to the trial court's factual findings that are supported by the record, we hold that the trial court did not abuse its discretion by denying Brimmer's application for habeas corpus. *See Torres*, 483 S.W.3d at 42; *Arreola v. State*, 207 S.W.3d 387, 393 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (affirming denial of habeas relief when appellant failed to show by a preponderance of the evidence that he was not aware of the consequences of his plea); *Valdez v. State*, 82 S.W.3d 784, 788 (Tex. App.—Corpus Christi 2002, no pet.) (similar); *see also Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006) ("A defendant's sworn representation that his guilty plea is voluntary constitute[s] a formidable barrier in any subsequent collateral proceedings." (internal quotation omitted)).

We overrule Brimmer's sole issue.

---

[7]In his brief, Brimmer argues that he did not understand the consequences of his plea, pointing to Factor's testimony that he had told Factor that he would "rather be out and fight the case." Brimmer's argument ignores other portions of the record, namely Factor's testimony that Brimmer had understood that he was pleading to a lesser charge and that Factor had told him about the consequences of making that plea.

## IV. Conclusion

Having overruled Brimmer's sole issue, we affirm the trial court's order denying habeas corpus relief.

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: February 19, 2026

19